UNITED STATES of America, Plaintiff–Appellee,

v.

Robert KISZEWSKI, Defendant–Appellant.

No. 1044, Docket 89–1005.

United States Court of Appeals, Second Circuit.

Argued May 2, 1989.

Decided June 13, 1989.

James J. Duane, Buffalo, N.Y. (Connors & Vilardo, of counsel), for defendant-appellant.

Anthony M. Bruce, Buffalo, N.Y., Sp. Atty., U.S. Dept. of Justice, Organized Crime and Racketeering Section, Buffalo Strike Force (Dennis C. Vacco, Buffalo, N.Y., U.S. Atty., W.D.N.Y., of counsel), for plaintiff-appellee.

Before LUMBARD, FEINBERG and NEWMAN, Circuit Judges.

FEINBERG, Circuit Judge:

Robert Kiszewski appeals from a judgment of conviction on five counts for making false statements to two grand juries and a trial jury, 18 U.S.C. § 1623, before which he testified during an extortion prosecution of two other persons. Appellant was tried before a jury and then-Chief Judge John T. Curtin in the United States

District Court for the Western District of New York, and received a five-year sentence on each count, to run concurrently. Kiszewski argues on appeal that (1) the district court erred in dismissing the original indictment against him without prejudice, rather than with prejudice, for violations of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., (2) he was denied a fair trial and (3) the district judge erred in his materiality rulings. For reasons set forth below, with one exception we affirm the rulings of the district court. The exception concerns a ruling denying in camera inspection of the personnel files of one witness, and as to that we remand for a further hearing.

## I. Background

In April 1985, Kiszewski contacted the office of the Federal Bureau of Investigation (FBI) in Buffalo and met with Special Agent John P. Culhane, Jr. to discuss Kiszewski's betting activities with a bookmaker. Kiszewski said that he owed the bookmaker a substantial sum and that the latter had been threatening Kiszewski in order to get him to pay his debt. The FBI thereafter began an investigation into the activities of Nicholas A. "Sonny" Mauro and Dennis Okun, on which Kiszewski worked as an undercover informant for the government, taping phone conversations and meetings with Mauro and Okun. At some of these meetings, Agent Culhane accompanied Kiszewski.

In July 1985, Kiszewski testified before a grand jury that indicted Mauro and Okun shortly thereafter for, among other things, using extortionate means to collect an extension of credit, in violation of 18 U.S.C. § 894. Kiszewski told the grand jury that he had originally placed the bets on his own and that later Okun started to threaten and scare him, which led to his contacting the FBI. In December 1985, after a falling out with the FBI, Kiszewski gave a recorded statement to Mauro's and Okun's attorneys, describing the events in a manner that created an inference of entrapment. Thereafter, they gave the transcript of the statement to the government. Kiszewski was therefore called before another grand

jury in March 1986, at which time he testified that the FBI was involved during the entire time that he was betting, not just after he received threats. Mauro and Okun were reindicted, and when they were tried, Kiszewski testified for the defense. Mauro and Okun raised the defense of entrapment and were acquitted on all counts in June 1986. Kiszewski's changed testimony as to the sequence of events obviously benefitted the defense.

In October 1986, Kiszewski was indicted on the false statement charges that led to this appeal. However, shortly before the case came to trial, Kiszewski moved to dismiss the indictment for violation of the Speedy Trial Act. In May 1988, Judge Curtin granted the motion and dismissed the indictment without prejudice. In the following month, Kiszewski was reindicted on the same counts, for testifying falsely before the second grand jury on March 6, 1988 (counts one and two), for testifying falsely at the Mauro and Okun trial (counts three and four) and for giving inconsistent testimony before the two grand juries (count five). At Kiszewski's trial, the two FBI agents implicated in the alleged entrapment by Kiszewski's testimony at the Mauro and Okun trial, Agent Culhane, and his supervisor, Special Agent Dean G. Naum, testified for the prosecution. Their testimony tended to show that the FBI was not involved in the Mauro and Okun investigation prior to the time when Kiszewski reported to the FBI that he had run up gambling debts and was being threatened.

The government offered no testimony as to count five, but merely introduced the allegedly contradictory transcripts of the two grand jury proceedings. Kiszewski testified in his own defense, and his testimony contradicted the agents' testimony and closely paralleled his testimony at the Mauro and Okun trial. The jury found Kiszewski guilty on all five counts. This appeal followed.

## II. Discussion

### A. Speedy Trial

Appellant's principal claim is that the district court abused its discretion in allow-

ing the government to reprosecute him after the first indictment against him had been dismissed for violation of the Speedy Trial Act. He argues that the judge either failed to consider or improperly weighed the factors in 18 U.S.C. § 3162 when deciding whether or not to dismiss the indictment with prejudice.

The Speedy Trial Act requires that an indictment be dismissed if defendant is not brought to trial within the time limits specified in 18 U.S.C. § 3161. 18 U.S.C. § 3162(a)(2). Section 3161(c) allowed the government 70 days of nonexcludable time to commence trial after Kiszewski was arraigned on the first indictment in October 1986. In moving to dismiss that indictment, Kiszewski calculated 200 days of nonexcludable time, a calculation that the government does not now dispute. Some of this time was delay that the government had successfully urged the magistrate to exclude after the period had passed, contrary to the law of this circuit, which prohibits a court from granting an ends-of-justice exclusion unless it balances the factors specified in § 3161(h)(8) of the Act at the outset of the period to be excluded. *United States v. Tunnessen*, 763 F.2d 74, 78 (2d Cir.1985), see also *United States v. Nixon*, 779 F.2d 126, 132 n. 2 (2d Cir.1985). Judge Curtin, in accordance with the Act and governing case law, correctly dismissed the indictment. The dismissal, however, was without prejudice, and the issue that remains is whether the district court should have dismissed the case with prejudice.

In passing the Speedy Trial Act, Congress left it to the district courts to decide whether to dismiss an indictment with or without prejudice to reprosecution, instructing courts to "consider, among others . . . the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). This language is obviously broad and the listed factors, as the statute indicates, are not exclusive. This gives a district court considerable discretion. A recent Supreme Court decision makes clear, however, that this discretion is not unbounded. In *United States v. Taylor*, — U.S. —, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), the Court stated that "when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* at 2420. The role of the appellate court is to decide whether the district court abused its discretion in light of the purposes of the Act. *Id.* at 2419. In *Taylor*, the Court reversed a district court's dismissal of an indictment with prejudice, which had been affirmed by the Ninth Circuit Court of Appeals, because the district court failed to consider all of the statutory factors and the factors it did rely on were unsupported by factual findings or evidence in the record. *Id.* at 2423.

When the indictment was dismissed in May 1988, Judge Curtin did explain why the dismissal was without prejudice. He pointed out that the offense charged was a serious one, which weighs against dismissal with prejudice. See, e.g., *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986). He also noted that confusion concerning whether defendant's prior attorney should have been in the case was the reason for the delay and that there had not been improper conduct by the prosecutor, thus describing "the facts and circumstances" leading to dismissal. He also stated that defendant had not urged or shown that he suffered any prejudice, a factor not mentioned in the statute, but stressed as relevant in the legislative history. See 120 Cong.Rec. 41794–95 (1974) (statement of Rep. Conyers), reprinted in A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 221–22 (1980).

The order of dismissal preceded the Court's decision in *Taylor* by about six weeks. After *Taylor* was handed down, Kiszewski requested the district court to reconsider its decision to dismiss the indictment without prejudice. In denying the motion for reconsideration, the district court addressed the statutory factors directly:

First, the seriousness of the charges contained in the indictment weighs heavily in favor of dismissing without prejudice, since perjury strikes at the heart of the integrity of the judicial system. Second, there is no evidence of either bad faith or a pattern of neglect by the United States Attorney. Moreover, the length of the delay attributable to the government was extremely short, and the defendant has not even alleged that he was prejudiced in any way by the delay. Third, allowing the government an opportunity to reprosecute the defendant would, on balance, have a favorable impact on the administration of justice. As noted above, perjury is an extremely serious offense, and the defendant has not even alleged any prejudice. Moreover, as noted by the Supreme Court, "[d]ismissal without prejudice is not a toothless sanction ..."; the government's case often suffers substantially because of the time required to obtain a new indictment. (citations omitted).

Thus, the district judge considered all of the factors listed in the Act—with one possible exception discussed below—in deciding to dismiss the indictment without prejudice. Appellant argues that the district court's conclusion on every statutory factor was wrong, but our inquiry is not whether we agree with Judge Curtin's assessment of each factor but only whether he abused his discretion. The portion of the Act leaving the decision as to whether or not to dismiss with prejudice to the discretion of the district court was a compromise, without which the Act would not have been passed, and, as the Supreme Court has noted, "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." *Taylor*, 108 S.Ct. at 2418. Although courts have used strong language expressing the idea that dismissal without prejudice is an empty remedy, see, e.g., *United States v. Jervey*, 630 F.Supp. 695, 698 (S.D.N.Y.1986), the Supreme Court made clear in *Taylor*, 108 S.Ct. at 2422, as Judge Curtin pointed out, that "[d]ismissal without prejudice is not a toothless sanction." Congress did not think that every violation of the Act warrants dismissal with prejudice, even though the original bill proposed it. See H.R. 7107, 92nd Cong., 1st Sess. (1971), a bill introduced by then-Representative (now Judge) Mikva, reprinted in A. Partridge, supra, at 282–83 ("such dismissal shall forever bar prosecution for the offense charged").

The district judge obviously regarded the crime here as a serious offense. He not only said so, but imposed a five-year sentence. The characterization is ordinarily true, since false testimony strikes at the heart of administering the criminal law. In this case, the falsity was particularly damaging because Kiszewski complained to the FBI in the first place and involved the government in a lengthy investigation and prosecution that he later nullified. It also seems that the facts and circumstances leading to the dismissal were not egregious; it was an oversight that no order pursuant to *Tunnessen* was procured during the period when the parties were discussing a possible conflict on the part of Kiszewski's first attorney. While we do not encourage neglect by the prosecutor, we have said before that "where the violation of the Act was unintentional and the resulting delay was not overly long, and where appellant has not presented evidence of prejudice, we do not believe that the administration of justice would be adversely affected by reprosecution." *Simmons*, 786 F.2d at 486. Although Judge Curtin made a finding as to only 57 days of nonexcludable time beyond the allowable 70 days under the statute, we realize that the number may actually have been as high as 130. The period of delay is certainly not minor, and we do not agree with Judge Curtin's characterization of the delay attributable to the government as extremely short. But we do not believe that this factor alone would justify our second-guessing the judgment of the district court, even though a similar delay might weigh more heavily in another case, because the bulk of the delay was apparently caused by unusual circumstances concerning a conflict of interest on the part of defendant's prior attorney.

Citing *United States v. Stayton*, 791 F.2d 17 (2d Cir.1986); *United States v. Fox*, 788 F.2d 905 (2d Cir.1986); *Tunnessen*, 763 F.2d 74; and *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368 (2d Cir.1979), appellant argues to us that prosecutors in the Western District have displayed a pattern of violations of the Act that was repeated in this case. Appellant claims that it is thus "painfully clear that the plain teachings of the ... Act are not likely to be brought home to the local [prosecutors] unless the decision of the District Court is reversed." Appellant also suggests that this factor—the impact of reprosecution on the administration of the Act—should weigh heavily here in persuading us to reverse, particularly since the district judge did not explicitly deal with it.[1]

█ It is disquieting that so many of our recent Speedy Trial Act opinions are in cases coming from the Western District. Certainly, if the prosecutors in that district had paid attention to *Tunnessen* in this case, there would not now be such a strong suggestion of a pattern of neglect. However, we believe that a district judge, particularly when he is the Chief Judge of the district as Judge Curtin then was, is in a better position than we are to know whether the prosecutors need to be sent "a strong message." *Taylor*, 108 S.Ct. at 2423. It is clear from the transcript that Judge Curtin believed the particular circumstances of this case did not justify sending such a message. On this record, that was "the sort of reasoned judgment that we as appellate judges would do well not to second guess." *Id.* at 2425 (Stevens, J., dissenting). For all of these reasons, we cannot say that the district court exceeded its discretion in deciding to dismiss the original indictment against Kiszewski without prejudice.

### B. Fair Trial

#### 1. Impeachment Evidence

In May 1988, defense counsel demanded, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the prosecution disclose exculpatory evidence, including "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the witness." When the trial was about to begin, defense counsel had still not received the requested *Brady* materials, so on August 9, 1988, defendant served a subpoena on the FBI for "[t]he complete personnel files maintained by the Federal Bureau of Investigation for Bureau agents Dean Naum and John Culhane, including any and all records pertaining to any complaint, investigation, or other internal administrative or disciplinary proceeding concerning either Naum or Culhane."

During an in camera discussion between the court and counsel on the first day of trial, the prosecutor stated that Agent Culhane's files contained no *Brady* material, and that Agent Naum's file contained complaints against him, one "to the effect that Mr. Naum was on the take," and one for appearing as a witness without the FBI's permission, and some other allegations. The prosecutor reported that the FBI exonerated Naum on the first complaint, issued a letter of reprimand on the second and deemed the other allegations unfounded. The court then refused to compel either an in camera review of the personnel files, or disclosure of such files to the defense.

Kiszewski contends that it was error for the court to refuse to compel disclosure of Naum's file because the information it contained may have been helpful for impeachment purposes. In this case, where the jury's verdict turned on the credibility of the witnesses, Kiszewski argues that such information may have been very important. He also claims that, compounding the prejudice, the prosecutor argued in summation that Agent Naum was a credible witness because of his long service to the FBI. The government responds that the allegations against Naum were ten years old, and

---

**1.** It is arguable that the district court's reference to the effect of reprosecution on "the adminis- tration of justice" was meant to refer as well to its effect on administration of the Act.

therefore would not have been useful as impeachment evidence, that they were only allegations, and that at the in camera conference counsel was informed about them and thus could have cross-examined Naum without having seen the file.

■ We agree with appellant that it was error for the district court to refuse to compel production of Naum's personnel file for in camera inspection based solely on the representations of the government. The law is clear that *Brady* and its progeny require that the government disclose material impeachment evidence. See *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Impeachment of a witness can make the difference between acquittal and conviction, see *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), and this is particularly true in a trial for making false declarations, where credibility is the central issue in the case and the evidence presented at trial consists of opposing stories presented by the defendant and government agents.

Because we, like the district court, have only the government's description of the allegations contained in Agent Naum's file and have not seen the file itself, we do not know whether the information, if disclosed, might have created a reasonable probability that the outcome of the trial would have been different. If the information creates such a probability, then the information is material and falls under the *Brady* rule. See *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. Srulowitz*, 785 F.2d 382, 389 (2d Cir.1986). Therefore, it is necessary to remand this case to allow the district court to conduct an in camera examination of the file to determine whether information in the file should have been disclosed and, if so, whether appellant is entitled to a new trial, or whether "nondisclosure was harmless beyond a reasonable doubt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987).

2. Polygraph Testimony

During the trial, in the course of direct examination of Agent Culhane, but in response to a question from the court, Culhane stated: "The sum and substance of it, your Honor, [i]s I accused [Kiszewski] of not telling me the truth and that I wanted him to take a lie detector test. He refused and that was pretty much the end of our relationship." A few moments later, apparently even though defense counsel had made no specific objection to the reference to a lie detector, the district court ordered the response stricken from the record, and stated: "There is no requirement that Mr. Kiszewski or anyone else be required to take a lie detector test under these circumstances.... Whether he refused to take a lie detector test on some other occasion has nothing to do with the issues here."

Appellant argues that the mere mention that Kiszewski refused to take a lie detector test was so prejudicial that he was denied a fair trial. The government responds that because the testimony related to a peripheral issue, was not the result of prosecutorial misconduct and was followed by a cautionary instruction, the error was harmless.

■ There is apparently no clear authority in this court on this issue, but other circuits that have reviewed references to polygraphs have not resorted to a rule that reversal is automatically required, but have analyzed the prejudice and determined whether the reference was harmless error. See, e.g., *United States v. Stackpole*, 811 F.2d 689, 695 (1st Cir.1987); *United States v. Murray*, 784 F.2d 188, 189 (6th Cir.1986). We adopt this approach, and believe that the prejudicial effect of Culhane's statement must be judged by looking at all of the circumstances.

■ Kiszewski refused to take a lie detector test when Culhane suspected that Kiszewski was lying about a matter not directly at issue in this case. In addition, Culhane's testimony was in response to a question by the court, not by the prosecutor, so there can be no claim that the

prosecutor was engaged in some kind of misconduct. Also, defense counsel's apparent failure to make an immediate, specific objection indicates that the reference did not have a strong impact on the listener. Finally, in a trial that consumed over 1200 pages of transcript, the reference was an isolated statement, the effect of which was neutralized by the district court's strong and timely corrective instruction. Although the agent should not have mentioned the polygraph, on this record we believe that any error was harmless beyond a reasonable doubt.

### 3. Prosecutor's Summation

Appellant argues that the prosecutor's summation was misleading and improper, and therefore deprived him of a fair trial. The prosecutor argued to the jury that it must either believe the FBI agents or the defendant, and that if it believed the defendant, it must conclude that the FBI agents were lying. Appellant claims that these comments were error, principally for the following reasons: because the prosecutor framed the issue as whether the jury believed the defendant's testimony, he created the impression that the defendant had the burden to show that he was truthful; the prosecutor created the impression that there was a fundamental inconsistency between the stories of the defendant and the agents when there was not such an inconsistency; and the prosecutor led the jury to believe that someone must have deliberately lied.

■ The prosecutor's remarks came perilously close to telling the jury that in order to acquit, it must conclude that the agents were lying, a form of argument we have repeatedly cautioned is improper. See *United States v. Richter*, 826 F.2d 206, 209 (2d Cir.1987); *United States v. Hestie*, 439 F.2d 131, 132 (2d Cir.1971). Nevertheless, we do not believe that the prosecutor's summation deprived appellant of a fair trial. First, after defense counsel objected during the summation, the district court immediately instructed the jury that the government had the burden of proof on every element of the offense, and that the

resolution of the case did not depend solely on whether the jury believed either the defendant's story or the government's story. Moreover, in a prosecution for false declarations, the government must be permitted to demonstrate the inconsistencies between the testimony of different witnesses in order to show that the defendant knowingly made a false statement. The prosecution's summation, therefore, legitimately addressed the inconsistencies. Furthermore, Kiszewski's testimony not only differed from the testimony of the FBI agents, it directly accused them of wrongdoing. In such a case, the two versions of the events could not be reconciled, and it was not error for the prosecution to direct the jury's attention to the differences between the accounts.

Appellant relies heavily on *United States v. Richter*, 826 F.2d 206 (2d Cir.1987), in arguing that we must reverse. That case, however, is distinguishable from the facts at issue here. In *Richter*, the prosecutor asked the defendant, on cross-examination, to state whether the FBI agent lied on the stand. *Id.* at 208. Then, the prosecutor called a second FBI witness to corroborate the first agent's story, *id.*, and misquoted the defendant's testimony in summation, *id.* at 209. The issue in that case, moreover, did not depend on the truthfulness of the FBI agents. In this prosecution for making false declarations, truthfulness was the central issue, and it was not misleading or unfair to focus so directly on defendant's veracity even though it might be in other criminal cases.

### C. Materiality Rulings

Appellant argues that the district court erred in various rulings on the materiality of the alleged false statements. Counts one and two charged Kiszewski for falsely testifying before the grand jury investigating Mauro and Okun as to the date upon which the FBI began its investigation of them. Appellant claims that this date could only have been material to the grand jury if it had been presented—which it was not—with the possibility of an entrapment defense. Therefore, appellant claims, the date was irrelevant to the grand jury and

his testimony regarding the date was not material. Appellant also argues that the date could not have been material on the theory, which the indictment alleged, that the date enabled the grand jury to assess the credibility of Agent Culhane. Appellant claims that if the date was irrelevant, then any inconsistency between his testimony and that of Culhane on that issue was inconsequential and necessarily not material to the grand jury's inquiry. Kiszewski argues, therefore, that counts one and two should be dismissed.

As to counts three and four, which were based on Kiszewski's testimony at the trial of Mauro and Okun, Kiszewski argues that they should be dismissed because instead of separately specifying different falsehoods, the indictment lists pages of Kiszewski's testimony. The claim is that if any statement in that testimony was not material, and some are not, then the counts must be dismissed. Finally, Kiszewski contends that count five must be dismissed because it charged him with offering contradictory evidence regarding whether he was placed in fear by the threats of Mauro and Okun, an immaterial matter because the victim's fear is irrelevant under the extortion statute.

■ To violate § 1623, the false declaration must be material, but materiality is a matter of law for decision by the trial judge. Therefore, this court reviews, de novo, any questions of materiality. *United States v. Mancuso*, 485 F.2d 275, 280 (2d Cir.1973). On the record in this case, we believe that the district court's materiality rulings were correct. Materiality in a grand jury investigation is broad—materiality is established "where the false declaration has 'a natural effect or tendency to influence, impede or dissuade the grand jury from pursuing its investigation,'" *United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980) (quoting *Carroll v. United States*, 16 F.2d 951, 953 (2d Cir.), cert. denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927)). The false statement does not have to be related to the principal objective of the grand jury to be material; statements concerning collateral matters may be material as well. *Id.* We

have said that "[m]ateriality is demonstrated if the question posed is such that a truthful response could potentially aid the inquiry or a false answer hinder it." *United States v. Moon*, 718 F.2d 1210, 1237 (2d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

■ Kiszewski's statements regarding the timing of the FBI's involvement were material because a grand jury should be able to find out how the government became involved in investigating a possible crime, and whether the government's involvement rises to the point where the accused should not be indicted. It is true that the second grand jury indicted Mauro and Okun despite Kiszewski's false testimony as to the timing of the FBI's involvement. But this testimony could have convinced the grand jury that Mauro and Okun did not commit any crimes and was, therefore, material. Indeed, the grand jury asked the Assistant United States Attorney about the matter. Similarly, on count five, regardless of whether the victim's fear is an element of the crime, the grand jury could certainly have considered the victim's fear in determining whether he had been threatened, and the threats were the principal focus of the investigation. Therefore, the false statements in count five were material under the standard in this circuit.

■ As to counts three and four, the government argues that appellant did not make question-by-question objections in the trial court, and thus did not preserve the issue for appellate review. *United States v. Bonacorsa*, 528 F.2d 1218, 1222 (2d Cir.), cert. denied, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976). Appellant responds that such objections were, in effect, made. This is not at all clear from the record. In any event, although every word quoted in the indictment may not have been material if judged in isolation, the testimony as a whole was material because it created the inference that the FBI was involved in the Mauro and Okun investigation throughout the period while Kiszewski was betting. Without this testimony, the entrapment defense urged by Mauro and Okun at their trial could not have been successful. The law is clear that a perjury conviction may stand on the meaning of a series of state-

ments understood together. See *United States v. Schafrick*, 871 F.2d 300, 304 (2d Cir.1989); *Bonacorsa*, 528 F.2d at 1221–22. Under this standard, we agree with the district court that the statements in counts three and four were material.

Finally, appellant argues that the district judge should not have told the jury that he had already ruled on materiality in the government's favor because the jurors understood such an instruction to mean that the judge had already determined that the statements were very important, and the jurors were therefore less likely to believe that inaccuracies in the testimony were merely mistakes. This argument is without merit. In order for the jury to know that it had to decide on the elements of the offense, but not materiality, it was proper for the judge to tell the jury that he had already resolved the materiality issue. See *United States v. Glantz*, 847 F.2d 1, 11 (1st Cir.1988). The judge correctly instructed the jury about its role, and we have no reason to believe that the jury was unable to follow those instructions.

Affirmed in part, remanded in part for further proceedings consistent with this opinion.