60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy WASHINGTON, Defendant-Appellant.
 No. 94-5914.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1995.
 
 Before: BOGGS, SILER, and GIBSON, Circuit Judges.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Leroy Washington appeals his conviction for being a felon in possession of a firearm and ammunition, and his sentence as an armed career criminal. For the reasons set out below, we affirm the conviction and sentence.
 
 
 2
 * On December 3, 1992, the Johnson City, Tennessee, police department received an anonymous 911 call reporting a gunfight. The caller also claimed a black male in a dark jogging suit had a pistol.
 
 
 3
 An unidentified man flagged down Officer G.W. Willis, the first to arrive at the scene, and told the officer that he heard a shot fired and saw a black man with a beard going down an alleyway with a gun. Officer Willis asked if the black male with the gun was the "one wearing the jogging suit," and the man responded "No, it's the other one."
 
 
 4
 Officer Willis then drove a police van in pursuit of the suspect, who turned out to be Leroy Washington. As Willis approached in his van, Washington fled on foot. After running about 100 feet, Washington turned toward Willis, put his right hand in his pocket, and took out a silver-colored gun. Willis, still in the van, ordered Washington to drop the gun. By this time, other officers had arrived at the scene and Washington dropped the gun and lay on the ground.
 
 
 5
 The officers on the scene handcuffed Washington and recovered the weapon, a .22-caliber derringer. The gun contained two rounds of .22-caliber ammunition and had not recently been fired. The police also found four .22-caliber rounds in Washington's pocket. The officers also discovered that Washington had a gunshot wound in his leg. Washington, who had refused to identify himself, was then placed in an ambulance.
 
 
 6
 During Washington's ride in the ambulance, officer Willis advised him of his Miranda rights. Washington said nothing. Because Washington had refused to identify himself, both before and after receiving the Miranda warnings, the police called Larry Brown, a drug task force officer, to the hospital in an attempt to identify the suspect. Brown identified him as Leroy Washington. The police claim that because Washington knew Brown, Washington relaxed and began to talk. When he began to talk, Officer Willis readvised him of his Miranda rights. Washington told Willis that a gang member shot him over money. Washington described the man as wearing a jogging suit with a hood. When Willis asked Washington why, being a felon, he had a gun, Washington replied, "Man, I had it for protection."
 
 
 7
 Washington was charged with two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. Secs. 922(g)(1) and 924(e)(1), and (2). Washington pleaded not guilty, but a jury convicted him of both counts. At his sentencing hearing, the court applied the armed career criminal provision of the Sentencing Guidelines, which provided a range of 210 to 262 months. The court sentenced Washington to 240 months in prison.
 
 II
 
 8
 Washington claims several purported errors at his trial require reversal. The only two warranting lengthy discussion are whether the government used his silence against him and whether the government wrongly forced him to characterize the testimony of government agents as false.[2]
 
 
 9
 At trial, Washington presented a "justification defense" to the possession of the Derringer and ammunition. He maintained that he was taking a short cut through an alley when a member of the "New York Boys," a drug gang in Johnson City, accosted him. Washington claims that he had a prior run-in with a member of the gang in a restaurant. Washington describes this member of the "New York Boys" as a black male, wearing a dark sweatsuit with a hood drawn tight about his face. He pointed his gun at Washington's face and threatened to kill him.
 
 
 10
 Washington claims that, after the man confronted him in the alley, he knocked the pistol down from his face, grabbed and head-butted the gang member, kneed him, and knocked him to the ground. When Washington knocked the gun from his face, it discharged, wounding Washington in the leg. Washington claims he took the gun and ordered the man to turn over his extra ammunition. After doing so, the "New York Boy" fled. Washington says he reloaded the gun and kept it until the police arrested him. He maintained at trial that he fully explained this "justification defense" to the police on the ride to the hospital.
 
 
 11
 In presenting its case at trial, the government elicited testimony from the police officers that Washington initially "exercised his right to remain silent" and that he never told them the self-defense story. To the contrary, the police testified, that when Washington spoke, he told them that the "New York Boy" shot him in a dispute over money, and that he was carrying the gun for protection.
 
 
 12
 Washington alleges that the government used his silence during questioning against him at trial by asking the police to describe his conduct. Washington claims that this amounted to a violation of Doyle v. Ohio, 426 U.S. 610 (1976). Doyle forbids a prosecutor from "seek[ing] to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest." Doyle, 426 U.S. at 611.
 
 
 13
 Because there was no contemporaneous objection, we review only for plain error. Plain error exists only when there is "a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." United States v. Hook, 781 F.2d 1166, 1172-73 (6th Cir.), cert. denied, 479 U.S. 882 (1986).
 
 
 14
 Specifically, Washington alleges that the police testimony that he initially refused to give his name and address creates ground for reversal. However, the testimony involved pre-Miranda silence and, generally, there is no Doyle violation where the questions relate to pre-Miranda silence, since one has not been informed of, and therefore relied on, the right to remain silent. See Jenkins v. Anderson, 447 U.S. 231 (1980); Fletcher v. Weir, 455 U.S. 603 (1982).
 
 
 15
 According to Washington, his extensive criminal history made him well aware of his constitutional rights. Therefore, he knew he had the right to remain silent, and the court should recognize that some people might be exercising their rights although the police have not formally warned them. We decline to adopt Washington's "experienced criminal exception" to this rule. Washington does not explain how the police, who did not know who he was, can be expected to know his prior criminal record. Further, it would seem odd that one with prior experience in the criminal justice system should receive the bonus of a broader right to remain silent then an average citizen.
 
 
 16
 Similarly, there is no plain error in the questions to the officers about what Washington said or did not say in the ambulance, since Washington claims that he didn't remain silent, but in fact spoke. It would be anomalous to hold that the prosecutor impinged "on the right to remain silent" when Washington is claiming not to have remained silent.
 
 
 17
 Finally, the prosecution can ask about the content of Washington's statements made to the police. "[A] defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." Anderson v. Charles, 447 U.S. 404, 408 (1980) (per curiam). One has a constitutional right to silence, not a right to tell a story and then explain crucial omissions by stating they were an exercise of the right to silence.[3]
 
 
 18
 Washington also complains that the prosecution repeatedly forced him during cross-examination to characterize the police as either mistaken or lying. While he never objected, he claims that United States v. Richter, 826 F.2d 206 (2d Cir.1987), stands for the proposition that such conduct can be plain error.
 
 
 19
 Washington is correct to a point. Richter did hold that such questioning can, in some circumstances, amount to plain error. However, what the Second Circuit found particularly offensive in Richter was the prosecution's use of the defendant's testimony to call a second agent as a rebuttal witness and the subsequent misquotation of defendant's testimony to the jury. Furthermore, the Second Circuit does not strictly enforce this rule. See United States v. Gaind, 31 F.3d 73, 77 (2d Cir.1994) ("[w]e note ... that defendants invoking Richter have not succeeded in obtaining reversal of their convictions when the starkly offensive prosecutorial delinquencies in Richter were not replicated"); See also United States v. Weiss, 930 F.2d 185 (2d Cir.), cert. denied, 502 U.S. 842 (1991); United States v. Scanio, 900 F.2d 485 (2d Cir.1990). This is particularly true where the credibility of the parties is crucial, as it is here. See United States v. Kiszewski, 877 F.2d 210 (2d Cir.1989); United States v. Durrani, 835 F.2d 410 (2d Cir.1987). The Second Circuit has stated that, "in Richter, the prosecutor asked the defendant, on cross-examination, to state whether the FBI agent lied on the stand. Then, the prosecutor called a second FBI witness to corroborate the first agent's story, and misquoted the defendant's testimony in summation." Kiszewski, 877 F.2d at 217.
 
 
 20
 Without deciding whether Richter should be adopted by this Circuit, we decline to apply Richter to this case. Credibility, whether Washington was believable, was a part of this case. Washington bore the burden of proof in persuading the jury that he had possessed the gun in self-defense. United States v. Singleton, 902 F.2d 471 (6th Cir.), cert. denied, 498 U.S. 872 (1990). Part of that burden was proving to the jury that his story was credible. Part of that credibility determination rested on his own claim that he had told the police his story and that the police never bothered to investigate. While there may indeed be circumstances where haranguing a witness with questions about whether the government agents were lying is plain error, this is not one of those cases. Washington cannot evade the clear import of his testimony, that he told the police something (thereby bolstering his story by making him appear forthcoming) that they deny ever hearing, and that, therefore, someone is being less than candid.[4]
 
 III
 
 21
 Washington also contends the court made several errors in the imposition of his sentence. First, he maintains that the court should have departed downward under USSG Sec. 5K2.11. This section provides for a downward departure where a defendant commits a crime to avoid a "greater harm." Washington claims that he possessed the gun because he took it away from the "New York Boy" to protect himself, and therefore avoided the greater harm of further personal injury. Second, Washington maintains that he should have received a two level reduction for "acceptance of responsibility" under USSG Sec. 3E1.1. Finally, Washington argues that 18 U.S.C. Sec. 3553(c) requires specific statements of judicial reasoning if a sentence falls within a certain guideline range and that range exceeds 24 months. Washington claims the court must state in open court the reasons for imposition of the sentence, and the reason for imposing the sentence at the particular point within the range. Washington maintains that the range here was 210 to 262 months and the court chose 240, stating it "would be kind of in the middle of what the range is...."
 
 
 22
 None of the sentencing issues raised by Washington have any merit. The court premised its refusal to depart downward because Washington purportedly prevented some greater harm on its disbelief of his story. Specifically, the judge stated that the "court does find that ... Mr. Washington had ... the defense that ... he came in and testified, and the jury didn't believe his story to be credible, and I didn't believe it to be credible either...." Therefore, Washington's bid failed because the judge found that Washington's story was simply not true.
 
 
 23
 Similarly the district court did not err in rejecting the bid for an acceptance of responsibility reduction. Washington bears the burden of proving his right to such a reduction by a preponderance of the evidence. See United States v. Moored, 997 F.2d 139, 145 (6th Cir.1993). The district court's determination of the defendant's acceptance of responsibility is a question of fact subject to reversal only if clearly erroneous. United States v. Meacham, 27 F.3d 214, 217 (6th Cir.1994). There is no evidence that Washington accepted any responsibility for his actions, let alone proved it by a preponderance of the evidence. The district court's rejection of his justification defense as a fabrication is, functionally, a conclusion that Washington was not telling the truth. This is far from acceptance of responsibility.
 
 
 24
 Furthermore, in setting the 240-month sentence the court specifically noted Washington's long criminal record, and set the sentence at that point because of "the history and character of yourself and to protect the public from further crimes which you might commit." This statement, and the context of the entire sentencing hearing, demonstrate that the judge carefully considered and discharged his statutory obligation in sentencing Washington.
 
 
 25
 Finally, Washington claims that the court erred in prohibiting his argument to the jury about his potential sentence. Washington moved the court to allow him to argue to the jury about the fifteen-year mandatory sentence Washington faced "because he possessed a firearm for five minutes after being shot." However, in the federal system there is no right to argue about sentencing to the jury. The Supreme Court has held that a criminal jury should be instructed that it "has no sentencing function and should reach its verdict without regard to what sentence might be imposed." Rogers v. United States, 422 U.S. 35, 40 (1975).
 
 
 26
 Furthermore, suffice it to say that the district court did not sentence Washington to 20 years in prison for "possessing a gun for five minutes." First, neither the jury or the judge believed that he possessed it for only five minutes. Second, Washington received 20 years in prison because since 1973, when he began his life of crime by murdering a police officer, he has managed to spend a total of only eight months outside the confines of a penal institution. The Commission designed the Guidelines to take into account not only the conduct for which a jury convicts a person, but also the context of that conduct.
 
 IV
 
 27
 The judgment of conviction and the sentence of the district court are AFFIRMED.
 
 
 
 *
 The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [2]
 Washington argues that he is entitled to a new trial because of comments made by the judge during voir dire. We disagree. The judge's comments, which as transcribed are rambling, clearly refer the jury to his jury charge. The court read the Sixth Circuit's Pattern Criminal Jury Instruction Sec. 7.05A during the charge
 
 
 [3]
 Washington also alleges that the prosecutor violated his rights by asking him on cross-examination when he informed his attorney about his justification defense. While this question proved to be harmless, because Washington gave an answer consistent with all of his other testimony, we note that this question was inappropriate and might, in other factual circumstances, amount to reversible error. Further, we decline to credit the tortured reasoning employed by the prosecutor to justify this question. The fact that a defendant has told his attorney his version of the factual circumstances of the crime, and then the attorney has advanced that line in his defense does not amount to a disclosure of confidential communications sufficient to constitute a waiver of the privilege. After all, unless the attorney witnesses the crime, all of the information he presents to the jury will come from the police or his client
 
 
 [4]
 Washington also claims that he is entitled to a new trial because the prosecutor made "an improper argument of law to the jury." In fact, the prosecutor was answering a question about the law of self-defense posed by the judge. His statements were a far cry from those present in the case Washington cites, Berger v. United States, 295 U.S. 78 (1935)