UNITED STATES of America,

v.

Salvatore AVELLINO,
et al., Defendants.

No. 97–CR–1062 (DRH).

United States District Court,
E.D. New York.

Jan. 23, 2001.

**216**

Loretta E. Lynch, United States Attorney, Eastern District of New York by Paul Weinstein, Kevin Mulry, Asst. U.S. Attys., Brooklyn, NY, for the Government.

Jay Goldberg, New York City, for Defendant Salvatore Avellino.

Gerald R. Shargel, New York City, for Defendant Frank Notarantonio.

Alan S. Futerfas, New York City, for Defendant Kevin Kallmeyer.

Stephen P. Scaring, Esq., P.C., Garden City, NY, for Defendant Dominick Ferrara.

Clayman and Rosenberg by Brian D. Linder, New York City, for Defendant Michael Avellino.

Herzfeld & Rubin by Ronald G. Russo, New York City, for Defendant Michael Malena.

Richard D. Haley, Hauppauge, NY, for Defendant Michael Tomenelli.

Ruskin, Moscou, Evens & Faltischek by Gregory J. Naclerio, Mineola, NY, for Defendant Anna Maria Ferrara.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Defendants Salvatore Avellino ("S.Avellino"), Michael Avellino ("M.Avellino") and Michael Malena ("Malena") "seek an order compelling the government to fulfill its constitutional obligations under *Brady v. Maryland.*" (Mem. Law Supp. Pretrial Mots. at 1.)

The same defendants, plus defendant Michael Tomenelli ("Tomenelli"), have moved, pursuant to Federal Rule of Criminal Procedure 7(f), for a bill of particulars: "[P]articularization [is sought] of the following charges: carting industry extortion conspiracy (Racketeering Act One, Count Three), conspiracy to murder Ernest De-Matteo (Racketeering Act Seventeen), interstate travel in aid of racketeering (Racketeering Act Eighteen), and conspiracy to defraud the IRS (Count Sixteen)." (Mem. Law Supp. Defs.' Mot. Bill of Particulars at 1.)

Defendant Kevin Kallmeyer ("Kallmeyer") seeks an order "[c]ompelling the government to (a) comply with its *Brady* obligations, including as to any testimony admitted under Fed.R.Evid. 806; (b) disclose any 'other crimes' evidence it intends to introduce; and (c) provide a summary of the testimony of any expert it intends to call at trial pursuant to Fed. R.Evid. 702." (Kallmeyer Not. Mot. at 1.)

### GOVERNMENT'S BRADY OBLIGATION

1. *Court's May 14, 1999 Order*

 Initially, only one defendant was named in indictment 96 CR 1062, Frank Notarantonio. His then attorney, Bruce Maffeo, Esq., moved for the production of *Brady*[1] and *Giglio*[2] material. The gov-

---

**1.** Under the holding of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

ernment agreed to produce all *Brady* material in its possession, other than *Giglio* material, forthwith. As to the *Giglio* material, the court directed the government to produce such material one month before trial for those cooperating witnesses who had previously testified for the prosecution about extortion in the carting industry and whose identities were thus publicly known. Remaining *Giglio* and Section 3500 material were to be produced two weeks before trial.

2. *Motion by S. Avellino, M. Avellino and Malena Asking the Court to Reconsider the May 14, 1999 Order*

S. Avellino, M. Avellino and Malena (collectively, "movants") correctly note that, even if the May 14, 1999 Order is deemed to be the law of the case, that doctrine does not preclude the subject from being revisited. Such reconsideration is, as movants argue, "particularly appropriate here because the Moving Defendants were not parties at the time that [the May 14, 1999 Order] was issued and therefore did not have an opportunity to be heard with respect to the appropriate timing of *Giglio* disclosure." (Mem. Law Supp. Pretrial Mots. at 11.) For that reason, reconsideration is granted.

3. *Timing of Brady, Giglio and Section 3500 Disclosure*

■ Movants maintain that the Court's establishment of differing discovery schedules for *Giglio* and *Brady* is logically flawed because *Giglio* material is *Brady* material. While it is well settled that impeachment evidence "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness"

falls within the *Brady* rule, *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), it does not follow that all *Brady* material must be disclosed simultaneously.

■ Neither statute nor case law has delineated a fixed time frame for disclosure. Yet as explained by Judge Glasser in· *United States v. Shvarts*, 90 F.Supp.2d 219, 225 (E.D.N.Y.2000) "[t]he holding in *Brady*, based as it was under the demands of due process, was aimed at insuring that the trial of a defendant will be a fair one." To accomplish that goal, it is imperative that the materials be furnished with sufficient lead time to permit their effective utilization by the defense. And that determination depends in large measure on the nature of the material involved. Which is to say some *Brady* material requires more investigation and analysis than other items. "Thus, while the requirements of due process underlie both the *Brady* doctrine and its offspring, including *Giglio*, the very nature of *Giglio* material dictates a different timetable for its effective use." *United States v. Frank*, 11 F.Supp.2d 322, 325 (S.D.N.Y.1998); *see also United States v. Jacques Dessange, Inc.*, No. 99 CR 1182, 2000 WL 280050, at *7–8 (S.D.N.Y. Mar. 14, 2000) ("*Giglio* material is customarily produced in this District with Section 3500 material in recognition of the fact that this type of *Brady* material does not ordinarily require any independent investigation in order to use it effectively at trial.").

■ In sum, *Brady* and its progeny instruct that a failure by the prosecution to provide the defense with exculpatory or material impeachment information, or the belated production of such information which prevents its effective utilization, is violative of due process. Here, we are

(1963), suppression by the prosecution of evidence favorable to the defendant violates due process where the evidence is material to guilt or punishment.

2. A co-conspirator of the defendant in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), was promised that he would not be prosecuted if he testified for the

government. That promise was not disclosed to the defense, causing the Supreme Court to hold: "When the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within [the *Brady* rule]." *Id.* at 154, 92 S.Ct. 763 (internal quotation omitted).

concerned solely with the timing of the disclosure rather than the withholding of the information. As to that subject, not all *Brady* material is the same and, accordingly, differing disclosure schedules—contrary to the position urged by movants—are permissible.

■ With respect to § 3500 material, the statute provides that a statement or report of a government witness need not be made available to the defense until the conclusion of the witness's direct testimony. 18 U.S.C. § 3500. A court has no power to compel the disclosure of such material prior to that time. *United States v. Percevault,* 490 F.2d 126, 131–32 (2d Cir.1974). However the government often agrees, as it has done in the present case, to release such information earlier given, inter alia, that adherence to the statutory disclosure provision may result in interruptions in the presentation of its case-in-chief. *See* 18 U.S.C. § 3500(c) ("Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.").

In those instances in which a statement or report of a government witness contains exculpatory or material impeachment information, the question arises whether the statutory mandate must yield to the due process concerns of *Brady.* Although the answer to that question may seem to border on the self-evident at first blush, there is a division of authority. *See Shvarts* 90 F.Supp.2d at 227–29 (discussing cases).

Complicating the analysis is the fact that subdivision (c) of § 3500, previously quoted, provides a mechanism presumably adopted to satisfy constitutional requirements by providing time for the defense to evaluate *Brady* material contained in a government witness's statement or report. If *Brady* pertained solely to a defendant's trial rights, such a mechanism seemingly

would pass constitutional muster. But such is not the case. As explained by the Second Circuit in *Avellino:*

> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant. Information coming within the scope of this principle ("*Brady* matter") includes not only evidence that is exculpatory, i.e., going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness. *See, e.g.,* [*Giglio* ] . . . .
>
> *The government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty.* The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government.

136 F.3d at 255 (citations omitted) (emphasis added); *see also United States v. Lino,* No. 00–CR–632, 2001 WL 8356, at *14 (S.D.N.Y. Jan. 2, 2001) ("[T]his Court concludes that impeachment material is *Brady* material and must be produced by the government in advance of trial . . . .").

■ Consideration of the dual relevance of such information to an accused compels the conclusion that due process requires that the government's *Brady* obligation trumps the statutory time table set forth in 18 U.S.C. § 3500 to the extent a temporal conflict is found to exist. To conclude otherwise would indicate that *Brady* information contained in § 3500 material could be withheld from the defense during plea negotiations with impunity, a result at odds with *Avellino.*

With the above principles in mind, attention will now be turned to movants' application for an amended discovery schedule.

### 4. *Amended Discovery Schedule*

■ As noted, movants' position that differing discovery schedules for exculpatory and impeachment *Brady* material are impermissible is unconvincing. Moreover, the government has an understandable interest in not including *Giglio* material with other, earlier disclosed *Brady* material since a by-product of *Giglio* disclosure is providing the defense with at least a partial listing of likely prosecution trial witnesses.

Here, however, such incidental early disclosure by the government is not a significant consideration as to those known witnesses from prior proceedings in this District involving extortion in the carting industry who are slated to reappear as part of the current prosecution.

Upon further reflection, and having had the benefit of additional submissions from counsel, the Court concludes that all *Brady* material, including *Giglio* material as to such continuing cooperating witnesses, should be furnished now rather than being subject to the two-tiered disclosure provisions of the prior Order.

Except for the above modification, however, the disclosure schedule set forth in the May 14, 1999 Order will remain in effect.

### 5. *Movants' Request for the Court to Conduct an In Camera Inspection*

■ Movants request that "[t]he government should be required to produce for in camera inspection any information presently within its possession, custody or control or which, with the exercise of due diligence can be obtained from other law enforcement officials with whom the government is currently working, that would constitute exculpatory evidence, i.e., material that demonstrates, or from which the defense can argue, that any of the Moving Defendants did not commit the crimes alleged in the indictment, or which is contrary to the government's theory of the case." (Mem. Law Supp. Pretrial Mots. at

12–13.) That request is coupled with reference to a purported investigation being conducted by the Suffolk County District Attorney's office into an alleged "extortion conspiracy involving the carters on Long Island in which organized crime generally, and Salvatore Avellino specifically, enforced a property rights system through illegal means." (*Id.* at 13.)

As earlier noted, the government is to furnish exculpatory material to defendants as it is uncovered. As to *Brady* material which may be possessed by either the government or by the Suffolk County District Attorney's office, the following excerpt from *Avellino* is instructive:

> The *Brady* obligation extends only to material evidence that is known to the prosecutor. An individual prosecutor is presumed, however, to have knowledge of all information gathered in connection with his office's investigation of the case and indeed "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other officers not working with the prosecutor's office on the case in question would inappropriately require us to adopt "a monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis."

136 F.3d at 255 (citations omitted).

If the government is "currently working" (Mem. Law Supp. Pretrial Mots. at 12) with the Suffolk County District Attorney's office, it has an obligation "to learn of any favorable evidence" acquired by that office as part of the joint operation and to make those items available to the defense.

Absent some type of indication, however, that the government is not discharging its *Brady* obligations, there is no need for the Court to undertake the requested in camera review and, for that reason, the Court declines to do so. *See, e.g., Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under [*Brady*], it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the Court's attention, [ ] the prosecutor's decision on disclosure is final." (footnote omitted)); *United States v. Kiszewski,* 877 F.2d 210, 215–16 (2d Cir. 1989); *United States v. Brooks,* 966 F.2d 1500, 1504–05 (D.C.Cir.1992).

Should the government have any question as to whether a particular item constitutes exculpatory *Brady* material, it should submit the material to the Court for in camera review. Additionally, the movants have listed a series of items by category (e.g., "a witnesses' rap sheet") which they claim constitute impeachment *Brady,* i.e., *Giglio* materials. (Mem. Law Supp. Pretrial Mots. at 13–17.) Items falling within one or more of those categories should be furnished to the defense consistent with the previously established disclosure schedule (*supra* at 7–8), unless the government believes either that its disclosure obligation does not pertain to that type of material generally (in which case it should explain its position in a letter brief, on notice), or there is a question whether a particular item falls within an agreed upon discovery classification (in which case the item should be submitted for in camera review).

### DEMAND FOR BILL OF PARTICULARS

Movants seek further particularization with respect to the following charges: carting industry extortion conspiracy (Racketeering Act One, Count Three), con-

spiracy to murder Ernest DeMatteo (Racketeering Act Seventeen), interstate travel in aid of racketeering (Racketeering Act Eighteen), and conspiracy to defraud the Internal Revenue Service (Count Sixteen).

In response, the government argues that the Court has already addressed the particulars required to be furnished with respect to the charged extortion conspiracy and that the present movants have proffered no reason why that Order should be modified. As to the other subject counts of movants' motion for a bill of particulars, the government maintains that the indictment is highly detailed and that the discovery provided has been voluminous, thus obviating the need for the particulars sought.

 The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). The Second Circuit has explained that "[g]enerally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Id.* Accordingly, a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990) (internal quotation marks omitted). "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States v. Payden,* 613 F.Supp. 800, 816 (S.D.N.Y.1985).

■ Principles governing requests for bills of particulars "must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988). And finally, "[w]hile a bill of particulars 'is not intended, as such, as a means of learning the government's evidence and theories,' if necessary to give the defendant enough information about the charge to prepare his defense 'it will be required even if the effect is disclosure of evidence or of theories.'" *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir.1998) (quoting 1 Charles Alan Wright, Federal Practice and Procedure § 129 (1982)).

Attention will be directed to the bill of particulars requests made by movants.

A. *Carting Industry Extortion Conspiracy Racketeering Act One, Count Three*

■ The government is correct in noting that the Court already issued an Order directing the particulars to be furnished regarding this Count. (*See* May 14, 1999 Order.) Under that Order, the government was directed to disclose the identities of carting companies who were the targets of actual or threatened violence by members of the alleged conspiracy and the approximate date of the extortionate conduct. By letter dated July 7, 2000, the government provided the information required. (*See* July 27, 2000 Goldberg Aff. Ex. B.)

The current movants, none of whom was a defendant at the time of the May 14, 1999 Order, maintain that they are still inadequately apprised of the "'specific acts of which [they are] accused,'" *Torres*, 901 F.2d at 234, and, accordingly, are not in a position to prepare a defense or to prevent surprise at trial. Upon revisiting the issue, the Court directs that the particulars detailed below—some of which parallel those in the original Order—be provided by the government.

■ It is true, of course, that no specific acts of violence or threatened violence need be proven to establish a conspiracy to commit such acts. Nonetheless, if the government intends to present evidence concerning the commission of specific acts in its effort to prove the charged conspiracy, it shall identify each of those acts by (1) giving a general description of the conduct involved (2) the identity of any of the named defendants who actually participated in the conduct (3) the identity of the victim and (4) the approximate date of such conduct. *See Barnes*, 158 F.3d 662; *Davidoff*, 845 F.2d 1151; *Spinelli v. United States*, 382 F.2d 871 (8th Cir.1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *overruled on other grounds by Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

B. *Conspiracy to Murder Ernest DeMatteo (Racketeering Act Seventeen)*

■ Racketeering Act Seventeen alleges that S. Avellino, along with others, did knowingly and intentionally conspire to murder Ernest DeMatteo "in or about and between 1992 and 1993, in violation of New York Penal Law Sections 125.25 and 105.15." In response to movants' complaint that the "government has not provided a scintilla of information concerning any conduct by [S.] Avellino ... in furtherance of this conspiracy," (Mem. Law Supp. Defs.' Mot. Bill of Particulars at 6), the government has indicated that its proof will show:

"S. Avellino instructed Stephen Bisulca to murder Ernest DeMatteo in the event S. Avellino was arrested. After Avellino was arrested in the Spring of 1993, he sent word from jail to Bisulca to not carry out the order to murder DeMatteo at that time."

(Gov't's Mem. Law Opp'n Defs.' Mot. Bill of Particulars at 7.)

This response by the government adequately apprises S. Avellino of his claimed

involvement. No further specificity is required.

### C. *Interstate Travel in Aid of Racketeering (Racketeering Act Eighteen)*

■■■ Racketeering Act Eighteen charges that between December 31, 1993 and December 3, 1994, M. Avellino, and others, violated 18 U.S.C. Sections 1952(a)(3)(A) and 2 by causing another person to transport approximately $200,000 from Long Island, New York to Las Vegas, Nevada. The additional verbiage in the racketeering act essentially tracks the statutory language of Section 1952(a)(3)(A) but fails to illuminate the particular conduct of which M. Avellino stands accused. The government partially addresses the dearth of information in its letter to the defense of July 7, 2000. Therein, some of M. Avellino's cohorts are identified as Carmine Avellino, James Trezza and Stephen Bisulca, and it is indicated that the subject gambling enterprise did business in the Eastern District of New York and that the transportation of the $200,000 in issue to Las Vegas was done to facilitate that enterprise.

The government argues against further information being provided on the ground that it would disclose its trial proof and theories. Yet, as noted in *Barnes*, 158 F.3d at 665, those considerations, valid as they may be generally, must yield in those instances in which a defendant does not have sufficient information to prepare his defense. Such is the case here. Accordingly, the government is directed to provide a general description of the type of gambling activity underlying the Travel Act charge as well as the location or locations from which the government maintains such activity was conducted.

### D. *Conspiracy to Defraud the United States (Count Sixteen)*

■■■ Count Sixteen charges defendants S. Avellino, M. Avellino and Michael Tomenelli, together with others, of conspiring to defraud the United States by obstructing the lawful function of the Department of Treasury in the ascertainment, computation, and collection of income taxes from M. Avellino and the "Avellino Companies." The count additionally charges that in order to further the objectives of the conspiracy, the named defendants, with others, took steps to conceal the true source and amount of income of the "Avellino Companies," and filed a number of false and misleading federal income tax returns. Those allegations are followed by a series of overt acts referencing M. Avellino's 1994, 1995, 1996 and 1997 income tax returns, the 1994, 1995 and 1996 income tax returns for Island Solid Waste, and the 1997 income tax return for Elamic Successor Corporation, formerly known as Island Solid Waste.

From the overt acts it appears that one of the goals of the charged conspiracy was to underreport the income that M. Avellino received from Island Solid Waste and its successor, Elamic Successor Corporation, and to falsify the information contained in his, and the corporate tax returns in furtherance of that goal. Presumably, however, the grand jury found that M. Avellino underreported income not only from Island Solid Waste and Elamic Successor Corporation, but from other corporations as well, given the reference to the "Avellino Companies." (*See* Indictment ¶¶ 95, 96.)

In response to the movants' detailed demand for broad based discovery as to this count, the government notes that "the defendants are not charged with income tax evasion but rather with a conspiracy to defraud the United States by thwarting the lawful function of the IRS." (Gov't's Mem. Law Opp'n Defs.' Mot. Bill of Particulars at 9.)

The government need not prove the actual filing of one or more false income tax returns to prove the charged conspiracy. Yet, the overt acts suggest that the government will endeavor to use such proof to establish the conspiracy. To the extent that is true, the government shall furnish the defense with a listing of each tax re-

turn filed by or on behalf of M. Avellino which it claims contained bogus entries, and the same information with respect to the particular companies (identified specifically, rather than generically as the "Avellino Companies") which supposedly filed false tax returns pursuant to the conspiracy.

Additionally, if the government's proof of the conspiracy is to include the actual filing of false tax returns, it will indicate generally the nature of the falsehoods involved as to each return, e.g., underreported income, false deductions, etc.

### DEFENDANT KALLMEYER'S DISCOVERY REQUESTS

Defendant Kallmeyer seeks an order directing the government (1) to comply with its *Brady* obligations, (2) to provide notice of evidence it will seek to introduce at trial under Federal Rule of Evidence 404(b), and (3) to furnish a written summary of any expert testimony it will endeavor to elicit at trial.

Kallmeyer's *Brady* demands largely parallel those of the other moving defendants and, thus, have already been addressed. As to Kallmeyer's other two requests, the government has indicated that it understands its obligations, and will furnish the requested information "one month before trial." (Gov't's Mem. Law Opp'n Defs.' Mots. at 119.) That timetable meets with the Court's approval. As a result, no further action is required as to those items.

### CONCLUSION

Except as noted above, the *Brady* demands and requests for bills of particulars of S. Avellino, M. Avellino, and Malena, as well as the items of relief sought by Kallmeyer, are denied.

Defendants' remaining motions will be addressed in a later decision or decisions of this Court.

SO ORDERED.