**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher BARNES, Defendant–**
**Appellant.**

No. 223, Docket No. 96–1494.

United States Court of Appeals,
Second Circuit.

Argued Aug. 29, 1997.

Decided Oct. 21, 1998.

Brian E. Spears, Bridgeport, CT (Shelley R. Sadin, Zeldes, Needle & Cooper, P.C., Bridgeport, CT, of counsel), for Defendant–Appellant.

Joseph W. Martini, Assistant United States Attorney, Bridgeport, CT (Christopher F. Droney, United States Attorney, New Haven, CT, Robert M. Appleton, Assistant United States Attorney, Bridgeport, CT, of counsel), for Plaintiff–Appellee.

Before: MESKILL and JACOBS, Circuit Judges, and KORMAN, District Judge.[1]

---

1. Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

KORMAN, District Judge:

Christopher Barnes was named in Count Twenty–Seven of a thirty-three-count indictment arising out of the prosecution of the most significant members of the Latin Kings street gang, an enterprise that was engaged "in narcotics trafficking, murder, and other acts of violence." The indictment begins by narrating in extensive detail the background and history of the Latin Kings and its "Connecticut chapter," the means and methods of the enterprise, and some fifteen specific racketeering acts that constituted the pattern of racketeering in which the named defendants were alleged to have engaged.

Christopher Barnes was not charged as either a member or an associate of the Latin Kings criminal enterprise or in the numerous violent crimes in aid of racketeering that are described with precise specificity in twenty-five separate counts. Barnes's name emerges in the first of what are captioned as the "Drug Distribution Counts." The first is Count Twenty–Seven, which charges thirty-three named defendants, including Barnes, with a conspiracy that began in about November 1991 and continued to the date of the indictment, May 3, 1995. The indictment alleges that during this period Barnes and his co-conspirators "conspired and agreed together ... and with others to the grand jury known and unknown, to possess with intent to distribute heroin and marijuana, Schedule I controlled substances, and cocaine and cocaine base, Schedule II controlled substances, contrary to the provisions of Title 21 United States Code Section 841(a)(1)."

The context and the caption that precede it suggest that the single conspiracy count was intended to include all of the narcotic-related activities that the Latin Kings enterprise engaged in during its existence. Indeed, except for one substantive count against one defendant, the single conspiracy count is the only "drug distribution count" alleged in the indictment notwithstanding the fact that the principal purpose of the Latin Kings enterprise was "[f]acilitating, promoting, protecting, and enhancing the drug trafficking activities of its members."

The intended scope of Count Twenty–Seven was confirmed by the Assistant United States Attorney during the trial of the case. Arguing for the admission of weapons found during a search of the headquarters of the Latin Kings, he told Judge Nevas that the case should not be viewed in terms of the two defendants who were actually on trial. Instead, he argued that the conspiracy alleged in Count Twenty–Seven "was a statewide multi-city conspiracy involving a lot of different people[;][s]o it's not a simple conspiracy[;][i]t's a very extensive and very dangerous conspiracy ...." Tr. 23 (April 9, 1996).

Unlike the other counts of the indictment that were specific and detailed, Count Twenty–Seven did not provide a single detail about the complex multi-year conspiracy nor about the role that the defendant, Christopher Barnes, played in assisting his co-conspirators or in carrying out its objectives. The only information provided was its duration, the names of the co-defendants, and those of the four narcotic drug controlled substances that the defendants conspired to possess with the intent to distribute.

This conspiracy count, which provides only the bare bones of the charge, forms the basis for the principal issues raised in this appeal from a judgment of the United States District Court for the District of Connecticut (Nevas, J.) convicting Christopher Barnes of the conspiracy alleged in Count Twenty–Seven and sentencing him to the custody of the Attorney General for a period of twenty years. Specifically, the defendant alleges that the district court "erred by failing to require a bill of particulars that would have informed defendant as to the nature of the charge and prevented unfair surprise." Brief of Defendant–Appellant ("Def.Br.") 1. The defendant also argues that the nature of the charge and the proof at trial make it impossible to determine whether the jury convicted him of the conspiracy to possess crack with the intent to distribute it, which accounted for the twenty-year mandatory minimum sentence he received, or whether the conviction was predicated on an agreement to possess one of the other substances named in Count Twenty–Seven. Under these circumstances, he argues that he should have been sentenced for conspiracy to possess the controlled substance carrying the

lowest mandatory minimum and maximum penalty.

The defendant also argues that Judge Nevas abused his discretion in admitting photographic evidence of weapons and ammunition seized during a search of the headquarters of the Latin Kings, and that Judge Nevas should have stayed the trial for three months to ensure the defendant the benefit of a new Qualified Jury Wheel. Moreover, he argues that Judge Nevas made a number of errors in calculating the appropriate Sentencing Guidelines.

## A. *The Denial of the Bill of Particulars*

█ The defendant's claim that he was entitled to a bill of particulars is not without merit. Count Twenty–Seven of the indictment was insufficient on its face to provide the defendant with sufficient detail to defend adequately the charges against him. The evidence at trial only served to confirm this obvious fact. Specifically, the evidence showed that the defendant aided and abetted the crack manufacturing conspiracy of the Latin Kings by supplying crack vials and renting cars. The United States Attorney also offered evidence that, on one occasion in April 1994, the defendant may have attempted unsuccessfully to act as a middleman in the sale of an unspecified controlled substance between one of the leaders of the Latin Kings and a third party. Evidence was also admitted that "a small amount of suspected marijuana" was found during a search of the headquarters of the Latin Kings at 208 East Main Street in Bridgeport. Government Appendix ("G.A.") 121.

More significantly, in terms of the defendant's claim of prejudice from the denial of a bill of particulars, Donafer Davis, an apparently late cooperating witness, testified to entering into a conspiracy with the defendant from September 1993 to April 1994 in which the latter would purchase cocaine and the two of them would convert the cocaine into crack. Davis testified that he was present on at least one occasion when the defendant picked up the cocaine from either Manny Roman or Richard Morales, who were the leaders of the Latin Kings, and that the defendant said he could obtain large quantities of cocaine from that source. Davis did not know whether any of the cocaine that the defendant supplied came from the Latin Kings other than the one occasion on which he was actually present.

Davis also testified that during this same period, he asked the defendant if he could obtain heroin from Manny Roman or Richard Morales. The defendant replied that he could. The defendant told Davis that he had spoken with Manny Roman or Richard Morales and they said they would get it for him. About two days later, the defendant brought Davis seven grams of heroin. None of the acts the defendant allegedly undertook with Manny Roman and Richard Morales is alluded to in the conspiracy count or anywhere else in the indictment.

█ Since the indictment provided not a shred of detail, the defendant was entitled to be otherwise apprised of the conduct that he was alleged to have undertaken in furtherance of this multi-faceted, if not multiple, conspiracy. *See, e.g., United States v. Ramirez,* 602 F.Supp. 783, 793 (S.D.N.Y.1985); *United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied sub nom. Marin v. United States,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). Moreover, it is of no consequence that the requested information would have required the disclosure of evidence or the theory of the prosecution. While a bill of particulars "is not intended, as such, as a means of learning the government's evidence and theories," if necessary to give the defendant enough information about the charge to prepare his defense, "it will be required even if the effect is disclosure of evidence or of theories." 1 Charles Alan Wright, *Federal Practice and Procedure* § 129 (1982).

█ A district court judge, however, has the discretion to deny a bill of particulars "if the information sought by defendant is provided in the indictment or in some acceptable alternate form." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987) (per curiam). Judge Nevas did not abuse that discretion here when he denied the defendant's application after "find[ing] that the

Government ha[d] provided the defendants with extensive additional information concerning their alleged involvement in the charged offenses so as to enable them to understand the nature of the charges against them, to prepare a defense, and avoid unfair surprise at trial." J.A. 116. *See Bortnovsky*, 820 F.2d at 574 (holding that the standard of review of a decision denying a bill of particulars is abuse of discretion).

The only challenge to Judge Nevas's finding is that "the Government's massive disclosures never revealed the true thrust of the prosecution, i.e., that defendant and Davis purchased cocaine from the Latin Kings." Def. Br. 13. The United States Attorney challenges this assertion, and there is evidence to contradict it. Indeed, when she objected to the testimony of Donafer Davis and of another witness, Barnes's attorney explicitly withdrew the suggestion that "[t]he government has not indicated what the testimony would be of those people," G.A. 64, and she acknowledged that the Assistant United States Attorney "has provided quite a bit of discovery about it." *Id.*

Nevertheless, it is unnecessary to resolve this factual dispute. The defendant has simply not been able to articulate any specific prejudice resulting from the alleged failure of the United States Attorney to disclose the substance of Davis's testimony relating to the cocaine and heroin purchases from the Latin Kings. Indeed, when asked repeatedly at oral argument what prejudice defendant had suffered, defendant's counsel could argue only that the specifics of Donafer Davis's testimony "came as a surprise and I think that in itself can establish prejudice." This circular argument is simply without merit. *See United States v. Horton*, 526 F.2d 884, 887 (5th Cir.) (holding that, where a fatal variance between the evidence and a bill of particulars is argued, the defendant "must demonstrate that he was taken by surprise by reason of the variance and that such surprise prejudiced the preparation of his defense"), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); *United States v. Glaze*, 313 F.2d 757, 760 (2d Cir.1963) (same).

Moreover, our reading of the transcript confirms the absence of any prejudice. The defendant had been apprised in advance of trial that Davis would testify. Indeed, at the start of a three-day weekend that preceded the conclusion of the direct examination and the commencement of the cross-examination, the defendant was apprised of the specific details of Davis's testimony on the record. G.A. 64–65. While it is true that his testimony added an additional "part" to the conspiracy, as a practical matter it involved little more than an additional accomplice witness who incriminated the defendant. The only "defense" to Davis's testimony, whether it related to the cocaine/crack conspiracy that Davis engaged in with the defendant or other matters to which Davis testified, was to attack his character and credibility. Tr. 96–98 (April 10, 1996). This attack focused principally on his criminal history and his obvious motive to help himself by falsely implicating the defendant. *Id.*

The defendant does not allege that he did not have sufficient time to prepare for the cross-examination through which this attack was mounted, nor does he suggest that, if we ordered a new trial, it would be anything more than a replay of the first. "In essence, appellant complains not of any harm but of denial of a form of discovery." *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981). Under these circumstances, although we have little hesitancy in saying that a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge, we have little difficulty in concluding that "substantial rights of his were [not] prejudiced by the denial," 1 Wright, *Federal Practice and Procedure* § 130, and that any error was harmless. Fed.R.Crim.P. 52(a); *United States v. Yefsky*, 994 F.2d 885, 894 (1st Cir.1993) (indictment that failed to satisfy Fed.R.Crim.P. 7(c)(1) was harmless where the defendant "had ample opportunity to rebut the government's charges").

## B. *The Sentence*

 Count Twenty–Seven charged the defendant with conspiring to possess four different controlled substances—cocaine, crack, heroin, and marijuana—with the intent

to distribute them. Judge Nevas calculated the Guidelines sentencing range, which was driven by the cocaine-base prong of the conspiracy, to be 210–262 months. Nevertheless, the twenty-year mandatory minimum sentence for a conspiracy to possess more than fifty grams of crack effectively increased the minimum end of the Guidelines sentencing range by thirty months. Judge Nevas imposed the mandatory minimum sentence of 240 months.

The defendant argues that where (1) a conspiracy to possess different controlled substances is alleged in a single count of an indictment and (2) the applicable mandatory minimum sentence depends on which controlled substance the defendant was guilty of conspiring to possess, a general verdict of guilty only authorizes the lowest mandatory minimum. If the defendant here had been convicted of conspiracy to possess a controlled substance that involved cocaine instead of crack, the mandatory minimum sentence would have been ten years instead of twenty. 21 U.S.C. § 841(b)(1)(B). More accurately, the prescribed mandatory minimum would have been five, which the defendant's prior felony drug conviction would double to ten. If the defendant had been convicted of conspiracy with the intent to distribute 7.5 grams of heroin, he would have faced a maximum sentence of thirty years, 21 U.S.C. § 841(b)(1)(C); if he had been convicted of conspiracy to possess with the intent to distribute marijuana, he would have faced a maximum sentence of ten years, 21 U.S.C. § 841(b)(1)(D). Because of the amounts of heroin or marijuana, there would not have been a mandatory minimum sentence.

The defendant argues that for the purpose of sentencing he should be deemed to have been convicted only of conspiracy to possess marijuana and that the maximum sentence should not have exceeded ten years. While we do not accept the argument that the defendant could only be sentenced for conspiracy to possess marijuana, the thrust of his argument is sustained by our holding in *United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984). The defendant there was charged with conspiracy to possess cocaine and marijuana and sentenced to eight years in prison. The sentence exceeded the maximum authorized for conspiracy to possess marijuana (which was five years), although it did not exceed the maximum for conspiracy to possess cocaine (which was fifteen). We held that the sentence was improper because, "in the absence of a special verdict, there was no way ... to know whether the jury intended to convict Eduardo Orozco for a cocaine-related conspiracy, for a marijuana-related conspiracy, or for a conspiracy involving both drugs." *Id.* at 1083. The remedy we chose gave the United States Attorney the option of retrying the defendant (and seeking a special verdict if he chose not to amend the indictment) or agreeing to have the defendant resentenced to the maximum permitted for conspiracy to possess marijuana. *Id.* at 1084.

The application of *Orozco–Prada* here would suggest that the defendant should have been sentenced pursuant to the penalty prescribed for a defendant who conspired to possess 7.5 grams of heroin, an offense that carries no mandatory minimum sentence and that carries a maximum sentence of thirty years. Of course, even if this scheme is followed here, it would not prevent Judge Nevas from considering other offenses involving the "same course of conduct" that he found that the defendant committed. *See* Sentencing Guidelines § 1B1.3 (a)(2). Because "[t]he 'same course of conduct' concept ... looks to whether the defendant repeats the same type of criminal activity over time .... [and] does not require that acts be 'connected together' by common participants or by an overall scheme," *United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir.1991), the Guidelines sentencing range could very likely reach the 210–262 period that Judge Nevas determined was applicable here. The defendant, however, would not face the mandatory 240–month sentence that Judge Nevas was forced to impose based on the assumption that the defendant was convicted of conspiracy to possess more than 50 grams of crack.

In an effort to cap the upper end of the Guidelines sentencing range, the defendant argues that *Orozco–Prada* requires that he be subject to a sentence not more than the

ten-year maximum prescribed for a defendant convicted of conspiring to possess marijuana. Post–Argument Letter Brief at 4–5 (Dec. 17, 1997). The latter was one of four substances the defendant was accused of conspiring to possess. We reject this argument, because our review of the record persuades us that it is inconceivable that the jury could have convicted the defendant of conspiracy to possess marijuana. The marijuana evidence introduced at trial was a "small amount of suspected marijuana" seized at the headquarters of the Latin Kings, G.A. 121, which other evidence indicated the defendant sometimes visited. While the Assistant United States Attorney argued to the jury in summation that it was sufficient to convict if it found that the defendant conspired to possess *either* cocaine or cocaine base or heroin or marijuana, Tr. 38 (April 10, 1996), and the instruction to the jury was consistent with this suggestion, *id.* at 190, the United States Attorney now concedes that there was insufficient evidence for the jury to conclude that the defendant conspired to possess marijuana.

This concession reflects the goal of obtaining a higher maximum sentence to which flesh would be added by the Sentencing Guidelines. Nevertheless, it is a concession that is clearly supported by the record. The evidence was not only legally insufficient, it was negligible. Indeed, when the defendant's attorney first raised this issue at oral argument, he contended that the mandatory minimum sentence for cocaine rather than crack should be applied here. Significantly, even he did not suggest that the appropriate alternative was marijuana.

Under these circumstances, notwithstanding the summation of the United States Attorney, we refuse to indulge the assumption that the jury's verdict could have been based solely on a finding that the defendant was guilty only of conspiring to possess marijuana. *See Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). Instead, we assume that the jury convicted the defendant of conspiring to possess at least one of those controlled substances as to which the evidence was sufficient. Because

the general verdict of guilty does not tell us whether the jury convicted the defendant of each of them, we follow *Orozco–Prada* and assume that the conviction is for conspiracy to possess the controlled substance that carries the most lenient statutorily prescribed sentence.

We turn now to the arguments advanced by the United States Attorney as to why we should not apply our holding in *Orozco–Prada* here. Until recently, the holding in *Orozco–Prada* reflected a widely accepted rule. As Judge Easterbrook observed at the outset of an opinion that took issue with *Orozco–Prada:*

> Five courts of appeals have held that, when the jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendants must be sentenced as if the organization distributed only the drug carrying the lower penalty. *United States v. Orozco–Prada,* 732 F.2d 1076, 1083–84 (2d Cir.1984); *Newman v. United States,* 817 F.2d 635 (10th Cir.1987); *United States v. Owens,* 904 F.2d 411, 414–15 (8th Cir.1990); *United States v. Bounds,* 985 F.2d 188, 194–95 (5th Cir.1993); *United States v. Garcia,* 37 F.3d 1359, 1369–71 (9th Cir.1994).

*United States v. Edwards,* 105 F.3d 1179, 1180 (7th Cir.1997), *aff'd,* —— U.S. ——, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998).

While Judge Easterbrook declared that all of these decisions were wrong, his analysis confused a judge's role in calculating the guidelines with that in applying the mandatory minimum sentence. Judge Easterbrook observed that "under the Sentencing Guidelines, the judge alone determines which drug was distributed, and in what quantity." *Edwards,* 105 F.3d at 1180. Moreover, in so doing, the "relevant conduct" rule requires a judge "to consider drugs that were part of the same plan or course of conduct, whether or not they were specified in the indictment." *Id.* Accordingly, a judge "may base a sentence on kinds and quantities of drugs that were not considered by the jury" and the judge may "even base a sentence on events underlying charges for which the jury returned a verdict of acquittal." *Id.* at 1180–81. This analysis led Judge Easterbrook to conclude that "[w]hat a jury believes about

which drug the conspirators distributed therefore is not conclusive—and a verdict that fails to answer a question committed to the judge does not restrict the judge's sentencing options." *Id.* at 1181.

This analysis is clearly correct as to the Sentencing Guidelines. Nevertheless, it does not necessarily hold with respect to a mandatory minimum sentence. While it is for the judge to determine whether the nature and quantity of a controlled substance a defendant conspired to possess triggers a particular mandatory minimum, a mandatory minimum sentence may not be imposed for conduct for which a defendant was either not convicted or affirmatively acquitted. Had the defendant here been charged with one count of conspiracy to possess cocaine and one count of conspiracy to possess crack, Judge Nevas could not have imposed the mandatory minimum sentence for crack if the jury found the defendant guilty of conspiracy to possess cocaine but was unable to reach a verdict, or found the defendant not guilty, on the charge of conspiracy to possess crack.

*United States v. Darmand,* 3 F.3d 1578 (2d Cir.1993) is on point. There we held that the trial judge erred in imposing a five-year mandatory minimum sentence for conspiracy to possess cocaine where the quantity triggering the mandatory minimum included cocaine that was not part of the conspiracy for which the defendant was convicted. In distinguishing between the calculation of the Guidelines sentencing range and the application of a mandatory minimum sentence, Judge Oakes wrote:

> Unlike the Guidelines, which require a sentencing court to consider similar conduct in setting a sentence, the statutory mandatory minimum sentences of 21 U.S.C. § 841(b)(1) apply only to the conduct which actually resulted in a conviction under that statute.

*Id.* at 1581. *See United States v. Lewis,* 110 F.3d 417, 422–23 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997); *United States v. Estrada,* 42 F.3d 228, 232 & n. 4 (4th Cir.1994); *United States v. Winston,* 37 F.3d 235, 240–41 (6th Cir.1994); *contra United States v.*

*Reyes,* 40 F.3d 1148, 1150–51 (10th Cir.1994). The problem with the present case, as *Orozco–Prada* makes clear, is that we cannot be sure of "the conduct which actually resulted in a conviction."

Our analysis of Judge Easterbrook's opinion in *Edwards* is not at odds with the Supreme Court's affirmance of *Edwards.* The Supreme Court simply held, as we do, that for the purposes of the Sentencing Guidelines, it is for the judge to determine "whether crack, as well as cocaine [or heroin], was involved in the offense-related activities." *Edwards v. United States,* —— U.S. ——, ——, 118 S.Ct. 1475, 1477, 140 L.Ed.2d 703 (1998). Because it was of no consequence to the ultimate sentence in *Edwards,* the Supreme Court did not address the defendants' argument that "the drug statutes, as well as the Constitution, required the judge to assume that *the jury* convicted them of a conspiracy involving *only* cocaine." *Id.* (emphasis in original). Justice Breyer observed that "petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy[;][t]hat is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines." *Id.* Moreover, although he did not say so, the same would have been true of a mandatory minimum sentence. *See Almendarez–Torres v. United States,* —— U.S. ——, ——, 118 S.Ct. 1219, 1231, 140 L.Ed.2d 350 (1998) ("[T]he risk of unfairness to a particular defendant is no less, and may well be greater, when a mandatory minimum sentence, rather than a permissive maximum sentence, is at issue."). Nevertheless, because the Guidelines sentencing range in the *Edwards* case exceeded the mandatory minimum and was less than the permissive maximum, Brief for United States at 17 & n. 6, *Edwards v. United States,* —— U.S. ——, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) (No. 96–8732), the Supreme Court did not need to resolve the issue that is presented in this case and that is resolved by our decision in *Orozco–Prada.*

The United States Attorney, however, argues that *Orozco–Prada* has been under-

mined—if not implicitly overruled—by our own cases that hold that the weight and quantity of a controlled substance are not elements of the offense of which the defendant was convicted. Because it is for the judge and not the jury to determine the nature of the drug that a defendant possessed or conspired to possess, the trial judge may resolve the ambiguity in the verdict. *See United States v. Reyes,* 13 F.3d 638, 640 (2d Cir.1994); *United States v. Campuzano,* 905 F.2d 677, 679–80 & n. 4 (2d Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). The cases on which the United States relies do not undermine *Orozco–Prada.* They stand only for the proposition that, *if* a jury determines that a defendant possessed or conspired to possess a controlled substance, then it is for the judge to resolve any dispute about the nature and quantity of the drug the defendant possessed or conspired to possess.

A simple hypothetical is illustrative. If defendant, *A,* is charged with possessing or with conspiring with *B* to take possession of a suitcase that *A* knew contained a controlled substance, the critical element that must be determined by the jury is whether *A* either knowingly possessed the suitcase containing a controlled substance or whether he entered into an agreement to do so (regardless of whether he knew the nature of the controlled substance). If the jury finds the defendant guilty, it is clearly for the judge to determine if the nature and quantity of controlled substance triggers the mandatory minimum. The same would be true if there was a single agreement to possess two suitcases containing controlled substances—one containing cocaine and one containing crack. The general guilty verdict in such a case would permit a sentence to be imposed for the quantity and substance found by the trial judge.

*United States v. Lewis,* 113 F.3d 487 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1679, 140 L.Ed.2d 816 (1998), upon which the United States Attorney relies, is a case in point. The evidence showed that a confidential informant met the defendant Lewis who offered to sell him crack cocaine. After obtaining permission from the Drug Enforcement Administration officials, the confidential informant initiated a purchase of cocaine from Lewis. Some 75 dime bags of cocaine were supplied by Lewis. Ultimately, a laboratory analysis showed that these dime bags contained 7.5 grams of cocaine base.

Lewis's only defense was that he had sold the informant cocaine instead of cocaine base. The jury found Lewis guilty, although it was not possible to "ascertain from the verdict whether it concluded that Lewis distributed cocaine base or powder cocaine or, indeed, even whether it reached a unanimous conclusion on this point." *Lewis,* 113 F.3d at 489. Nevertheless, the trial judge found that the substance was cocaine base and imposed a more severe mandatory minimum for this offense. *Id.* The Court of Appeals for the Third Circuit held correctly that this was an issue for the judge to decide. *Id.* at 490.

We have no quarrel with the holding in *Lewis* because the jury verdict established that the defendant was guilty of every element of the offense alleged. The quantity and nature of any controlled substance he concededly distributed remained to be determined by the judge. Indeed, *Lewis* is consistent with our own holdings in this regard. The problem in this case is that our review of the record suggests that at least two, if not three, separate agreements may have been charged under the umbrella of a single conspiracy count. The general verdict of guilty, therefore, tells us no more than that the jury found Barnes guilty of either (a) conspiracy to aid and abet the Latin Kings crack distribution operation by providing crack vials and renting cars, or (b) conspiracy to purchase cocaine from two principals of the Latin Kings, Manny Roman and Richard Morales, as part of a separate conspiracy with Donafer Davis to convert the substance to crack, or (c) purchasing heroin from Roman and Morales as a part of a separate conspiracy to sell it to Donafer Davis.

While it is arguable that a properly instructed jury would have found that the purchase of cocaine *and* heroin from Manny Roman and Richard Morales constituted a single conspiracy, the jury was not properly

instructed.[2] In any event, there is an ample factual and legal basis for concluding that the cocaine/heroin conspiracy was separate and distinct from the acts Barnes had taken to facilitate the crack distribution conspiracy of the Latin Kings. Indeed, unlike the cocaine/heroin conspiracy, the defendant's guilt with respect to the facilitation of the crack distribution conspiracy did not even require proof that he actually conspired to possess crack with the intent to distribute it. Instead, he need only have conspired to aid and abet the distribution of it by the Latin Kings. *See United States v. Perry,* 643 F.2d 38, 46–47 (2d Cir.1981), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); American Law Institute, *Model Penal Code and Commentaries* § 5.03, Comment 2(c)(iv) at 421 (1985)("[I]f the purpose of the agreement is to facilitate commission of a crime, the actor need not agree 'to commit' the crime . . . . It is enough that he agree to aid in its planning or commission, thus comprehending accessorial participation if the requisite consensus is involved.").[3]

Under these circumstances, the general guilty verdict here provides no guidance in determining which statutorily mandated sentence is applicable. Indeed, because the summation of the Assistant United States Attorney and the judge's charge suggested that a finding that the defendant conspired to possess either of the four controlled substances would suffice to warrant a guilty verdict, it was entirely possible for the jurors to have concluded their deliberations after finding the defendant guilty of only one of the conspiracies underlying Count Twenty–Seven.

*United States v. Malpeso,* 115 F.3d 155 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998), upon which the United States Attorney also relies, does not compel a contrary result. The defendant there was convicted of Count One of an indictment that charged him "with conspiracy to murder members of the Persico faction of the Colombo Family for the purpose of gaining entrance to and maintaining and increasing their positions in the Colombo family, an enterprise engaged in racketeering activity, in violation of 18 U.S.C. § 1959(a)(5)." *Id.* at 161.

The maximum sentence the defendant faced in *Malpeso* was ten years, there was no mandatory minimum, and the evidence was sufficient to establish that he conspired to commit at least one of the murders alleged as an object of the conspiracy. The base level for the crime of conspiracy to commit a single murder is 28, which carries a Guidelines sentencing range of 78–97 months. U.S. Sentencing Guidelines § 2A1.5. Consistent with our rulings in narcotics cases, we held that the Constitution did not preclude the application of a guideline sentence (within the range set by the offense of conviction) that was based on other murders that the judge found the defendant conspired to commit in furtherance of the crime of conviction. 115 F.3d at 167–68 (applying U.S.S.G. § 1B1.2(d), comment. (n.5)). Indeed, we expressly observed in *Malpeso,* as the Supreme Court did in *Edwards,* that the sentencing judge's determination would have no effect on the statutory sentence applicable. *Id.* at 168. Unlike *Malpeso,* the issue in the present case is whether the defendant was guilty of the offense that carries the penalty mandated by the statute defining the offense and not whether the judge is free to consider other acts in fixing an appropriate range under the Sentencing Guidelines.

---

**2.** The Assistant United States Attorney conceded that the "second half" of the conspiracy to purchase cocaine and heroin from Manny Roman and Richard Morales, *i.e.,* Barnes's agreement to distribute crack and heroin with Donafer Davis, was not alleged to come within the ambit of Count Twenty–Seven. Tr. 19–20 (April 4, 1996)("To the extent Mr. Barnes was participating in another crack cocaine or heroin conspiracy with some of those other witnesses [Donafer Davis and Dwayne Jones, who did not testify because of illness], he may be held accountable for that at some point in the future but that's not

what this case is about."). The jury was never told that the cocaine/heroin conspiracy they were considering was limited in this way.

**3.** The jury instruction here was consistent with this statement of the law. *See* Tr. 189–90 (April 10, 1996) ("If . . . a conspiracy existed and if a defendant knew of the conspiracy and purposefully took some part . . . in carrying it into effect, he became part of it and may be found guilty of conspiracy.").

The United States Attorney also argues that *Orozco–Prada* has been effectively overruled by *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). *Griffin* addressed the entirely separate issue "whether, in a federal prosecution, a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support conviction as to one of the objects." *Id.* at 47, 112 S.Ct. 466. The holding that such a verdict need not be set aside is based on the premise that jurors using "their own intelligence and expertise," *id.* at 59, 112 S.Ct. 466, will not convict " 'on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.' " *Id.* at 59–60, 112 S.Ct. 466 (quoting *United States v. Townsend,* 924 F.2d 1385, 1414 (7th Cir.1991)).

We follow the holding in *Griffin* in refusing to vacate the conviction here because of the insufficiency of the evidence regarding the alleged conspiracy to possess marijuana. *Griffin,* however, does not address the problem of determining which of two or more possible statutory schemes applies where the evidence is sufficient to sustain a verdict as to two or more separate conspiracies underlying a single conspiracy count. Instead, the problem here is analogous to that presented where a count of an indictment charges two or more offenses. As Judge Feinberg wrote in *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980), " [i]f an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both." While such a defect was found harmless in *Murray,* because the defendants "were sentenced as if they had violated only one of the statutes, each of which in this instance carries the same penalties," *id.* at 898, here we can render the error harmless only by permitting a sentence for the conspiracy carrying the lowest mandatory minimum and maximum sentence.

The applicability of this remedy is not undermined because Count Twenty–Seven (like the conspiracy count in *Orozco–Prada* ) does not charge the violation of more than one statute. "We have a case, instead, in which the count charges the violation of a single conspiracy statute [21 U.S.C. § 846], but where the conspiracy has two [or more] objects. We believe that this case raises the same problems of ascertaining juror intent that is at issue in counts charging the violation of multiple statutes." *Orozco–Prada,* 732 F.2d at 1084. Indeed, this analysis applies with particular force here, where—notwithstanding the single conspiracy alleged—the evidence suggests more than one agreement to possess a controlled substance with the intent to distribute it in violation of 21 U.S.C. § 841(a).

In sum, after considering carefully each of the arguments raised by the United States Attorney, we are satisfied that *Orozco–Prada* provides a rational means of insuring that a statutorily mandated sentence is imposed only where it is clear that the jury found that the defendant committed or conspired to commit the acts that warrant the sentence.

■ We turn now to the two potential procedural forfeiture issues. The first is whether the defendant should be precluded from raising the sentencing issue here because he failed to ask for a special verdict. In *Orozco–Prada* we approved of the suggestion of the D.C. Circuit that it is "the government's responsibility to seek special verdicts." *Id.* at 1084 (citing *Brown v. United States,* 299 F.2d 438, 440 n. 3 (D.C.Cir.), *cert. denied,* 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962)). Under these circumstances, the failure of the defendant to seek a special verdict does not prevent him from raising the issue on appeal. *Accord United States v. Garcia,* 37 F.3d 1359, 1370 (9th Cir.1994), *cert. denied,* 514 U.S. 1067, 115 S.Ct. 1699, 131 L.Ed.2d 562 (1995).

■ The second possible procedural forfeiture arises from the fact that the issue of an appropriate mandatory minimum sentence was raised for the first time at oral argument. "Normally, we will not consider arguments raised for the first time in a reply brief, let alone [at or] after oral argument." *Keefe v. Shalala,* 71 F.3d 1060, 1066 n. 2 (2d Cir.1995); *United States v. Kessler,* 449 F.2d 1315, 1317 (2d Cir.1971). This rule, formulated for orderly briefing and argument of appeals, is not jurisdictional. We decline to

apply it here for reasons similar to those in *United States v. Restrepo,* 986 F.2d 1462 (2d Cir.), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993). The defendant there argued "in one of the 28 footnotes appended to his 50–page brief" that a sixty-two month sentence was two months longer than the maximum sentence for the crime of which he was convicted. *Id.* at 1463. This argument was understandably overlooked when the appeal was decided, and the defendant moved for reargument.

Reargument was granted and the sentence was vacated notwithstanding the rule that "[w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." *Id.* Nonetheless, "because the sentence imposed [t]here was 'in excess of the maximum authorized by law' and, therefore, expressly made subject to correction under 28 U.S.C. § 2255, we t[ook] the opportunity afforded to us by counsel . . . to require the district court to correct the sentence, without the necessity of defendant's bringing an additional proceeding." *Id.*

Unlike *Restrepo,* the defendant here flagged the argument in a way that could not be missed, and if the sentence is defective it is because there is an insufficient basis for concluding that it is authorized by law. These considerations justify the exercise of our discretion to consider the issue, even though it was raised for the first time at oral argument.

### C. *The Remaining Arguments*

■ The defendant's remaining three arguments require only brief discussion. The defendant argues that Judge Nevas inappropriately admitted evidence of guns and ammunition seized during a search of "a Latin Kings meeting place, even though defendant was *not* a member of the gang and did *not* have more than minimal contact with the place at which the Government seized the evidence." Def. Br. 16 (emphasis in original). This evidence, which consisted of testimony and photographs, could have been excluded without in any way weakening the case against the defendant. Nevertheless, we do not believe that it was an abuse of discretion warranting reversal to have admitted the evidence.

The jury was aware of the fact that the defendant was not alleged to have been a member of the Latin Kings, at whose headquarters the weapons were found, and of the fact that he did not have more than minimal contact with the place at which the evidence was seized. Indeed, in his summation, the Assistant United States Attorney told the jury that "Christopher Barnes is not a member of the Latin Kings. There has never been any claim made that he is a member of the Latin Kings. He is not." Tr. 29–30 (April 10, 1996). Moreover, this point—which was plainly supported by the evidence—was. emphasized repeatedly during the defendant's summation. *Id.* at 92, 100, 105. The following excerpt from the defense summation is illustrative:

> [The defendant is] not a member of the Latin Kings. [Members of the Latin Kings] are not allowed to discuss business with him. He's not allowed in the back room [where the weapons were found], he doesn't go to meetings, he doesn't pay dues, he's not part of that organization that you read about in that indictment. Mr. Martini [the prosecutor] pointed out to you that it's the Government's position that every one of those people in the indictment is a member of the Latin Kings except Mr. Barnes.

*Id.* at 100.

The circumstances presented here make this one of those cases in which the defendant's argument regarding the lack of relevance of the disputed evidence proves too much. Because it was so clear that the defendant was not a member of the Latin Kings, and because it was so clear that he was not connected with the weapons or any violence associated with them, the prejudicial effect of the evidence was simply undermined by its lack of probative value. Moreover, for this reason and because of the weight of the other evidence, we cannot say that the admission of this evidence had a substantial and injurious effect on the outcome of the trial. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

We likewise find to be without merit defendant's argument that Judge Nevas should have stayed the trial for three months which would "have allowed the defendant the benefit of the new Qualified [Jury] Wheel with its updated motor vehicle and voters' records." Def. Br. 30. Because the application was denied, defendant alleges that he "was forced to proceed under the old wheel and, as a result, was denied a reasonable opportunity for a representative jury venire." *Id.* We agree with the United States Attorney that the defendant's challenge to the "old wheel" is foreclosed by *United States v. Rioux,* 97 F.3d 648 (2d Cir.1996), and *United States v. Fields,* 113 F.3d 313 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997).

Lastly, we find that defendant's remaining arguments relating to the calculation of the Sentencing Guidelines are without merit and do not warrant discussion.

### Conclusion

The United States Attorney is given the option of retrying the defendant (and seeking a special verdict if he chooses not to amend the indictment) or having him resentenced. The sentencing range would be consistent with the sentence prescribed in 21 U.S.C. § 841(b)(1)(C) for conspiracy to possess heroin, the controlled substance carrying the lowest mandatory minimum and permissive maximum penalty. This is the procedure followed in *Orozco–Prada.* Accordingly, the mandate is withheld for thirty days to permit the United States Attorney to advise us whether he is prepared to consent to the resentencing. If so, the mandate affirming the judgment of conviction and remanding for resentencing will issue; if not, the judgment of conviction will be vacated and a new trial ordered.