317 F.3d 86
 UNITED STATES of America, Appellant,
v.
Alan QUINONES and Diego B. Rodriguez, Defendants-Appellees,
Hector Vega, a/k/a Jimbo; Janet Soto; Milton Rivera; Joseph C. Brown; Johnny Rodriguez, a/k/a Blaze; Saul Hernandez; Raul Hernandez, a/k/a "Twin", a/k/a Carlos P. Luis; and Robert Veve, Defendants,
 Docket No. 02-1403(L).
 Docket No. 02-1405(CON).
 United States Court of Appeals, Second Circuit.
 Argued: October 21, 2002.
 Decided: December 10, 2002.
 Order on Petition for Rehearing: January 16, 2003.
 
 Meir Feder, Assistant United States Attorney (Gary Stein, Assistant United States Attorney, on the brief), for James B. Comey, United States Attorney for the Southern District of New York, New York, NY, for Appellant.
 Samuel R. Gross, University of Michigan Law School, Ann Arbor, MI (Don D. Buchwald, Buchwald & Kaufman, New York, NY; Lee Ginsberg, Freeman, Nooter & Ginsberg, New York, NY; Jean Barrett, Ruhnke & Barrett, Montclair, NJ; Kevin McNally, Frankfort, KY; Avraham Moskowitz, Moskowitz & Book, New York, NY, on the brief), for Defendants-Appellees.
 Before: WINTER, MCLAUGHLIN, and CABRANES, Circuit Judges.
 OPINION AND ORDER DENYING PETITION FOR PANEL REHEARING
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 In an opinion filed on December 10, 2002, United States v. Quinones, 313 F.3d 49 (2d Cir.2002), we reversed an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge), declaring unconstitutional the Federal Death Penalty Act of 1994 ("the FDPA"), Pub.L. No. 103-322, Title VI, §§ 60001-60026, 108 Stat.1959 (Sept. 13, 1994) (codified at 18 U.S.C. §§ 3591-3598). We assume familiarity with our previous opinion.
 
 
 2
 On December 24, 2002, the defendants filed a petition for panel rehearing (the "Petition"), arguing that we misunderstood their argument, the opinion of the District Court, and various controlling Supreme Court cases. The Government responded in a brief filed on January 8, 2003. After careful review, we conclude that the defendants' claims are without merit.
 
 
 3
 At the core of the defendants' Petition is their claim that our opinion misconstrued both their argument and the opinion of the District Court by addressing the question of whether the death penalty is inherently unconstitutional. The Petition asserts that the District Court did not declare the death penalty unconstitutional per se but, instead, held that the specific procedures set forth in the FDPA render capital punishment unconstitutional under that particular statute. Petition for Rehearing, Dec. 24, 2002, at 3-7. This assertion is inaccurate.
 
 
 4
 The very language used by the District Court makes clear that the Court declared the death penalty itself, as well as the FDPA, unconstitutional. Most significantly, the Court expressly held that the FDPA "violates substantive due process." United States v. Quinones, 205 F.Supp.2d 256, 257 (S.D.N.Y.2002) ("Quinones II"); see also id. at 259 (stating that the references to capital punishment in the due process clause do not prevent the District Court's holding because "[t]here is ... no indication that the Framers of the Constitution ever considered the issue of the death penalty as a substantive matter; they were simply concerned with extending due process to the full range of existing proceedings" (emphasis added)); id. at 262 n. 6 ("As previously noted, considerations of both substantive and procedural due process inform the decision of the instant Court: the fundamental notion that execution of the innocent is a constitutionally intolerable event sounds in substantive due process...."). Accordingly, the District Court clearly declared the substance of the statute — namely, the authorization of capital punishment for certain crimes — unconstitutional.
 
 
 5
 Further, the Court consistently phrased its analysis in terms of the constitutionality of the "death penalty," rather than the constitutionality of the FDPA. Most notably, the Court declared:
 
 
 6
 In constitutional terms, the issue is whether — now that we know the fallibility of our system in capital cases — capital punishment is unconstitutional because it creates an undue risk that a meaningful number of innocent persons, by being put to death before the emergence of the techniques or evidence that will establish their innocence, are thereby effectively deprived of the opportunity to prove their innocence — and thus deprived of the process that is reasonably due them in these circumstances under the Fifth Amendment.
 
 
 7
 United States v. Quinones, 196 F.Supp.2d 416, 418 (S.D.N.Y.2002) ("Quinones I") (emphasis added); see also Quinones II, 205 F.Supp.2d at 257 ("in enforcing the death penalty a meaningful number of innocent people will be executed who otherwise would eventually be able to prove their innocence" (emphasis added)); id. at 258 ("the nature of the challenge to the death penalty here presented is essentially a facial challenge" (emphasis added)); id. at 259 (labeling the issue presented as pertaining to "the constitutionality of the death penalty on the ground here under consideration" (emphasis added)); United States v. Quinones, 313 F.3d 49, 53 (2d Cir.2002) (noting that the District Court initially framed the issue during its October 21, 2001 pretrial conference as whether "`a form of penalty that precludes forever rectification of err[or]s that go to actual innocence a form of penalty that accords with the Constitution'").
 
 
 8
 Further, the Court's holding, that "the Federal Death Penalty Act, by cutting off the opportunity for exoneration, denies due process and, indeed, is tantamount to foreseeable, state-sponsored murder of innocent human beings," Quinones II, 205 F.Supp.2d at 257 (emphasis added), necessarily applies to all death penalty statutes because it is based only on the fact that the FDPA "cut[s] off the opportunity for exoneration" — a feature common to all death penalty statutes, regardless of their specific procedures and requirements.
 
 
 9
 The District Court's opinion scarcely mentioned, let alone relied upon, any particular procedures set forth in the FDPA. In fact, the data relied upon by the District Court in support of its essential determination that a significant number of innocent people have been executed was based upon state executions, which stemmed from state capital statutes with entirely different procedures and requirements for capital conviction and punishment than those provided for by the FDPA. Quinones I, 196 F.Supp.2d at 417-18. The District Court's opinion relies on only one similarity between the FDPA and these state statutes: the fact that they all authorize capital punishment.[1] Accordingly, the only logical interpretation of the District Court's opinion is that it held the FDPA unconstitutional simply because it provides for capital punishment, and not as a result of the particular procedures for which it provides.
 
 
 10
 For all of these reasons, there can be no doubt that the District Court's order declared capital punishment unconstitutional per se.
 
 
 11
 The defendants also claim that, in addressing whether the death penalty is unconstitutional per se, we misconstrued their argument on appeal. An examination of their briefs, however, makes clear that the defendants were asking us to declare the death penalty unconstitutional per se. For example, in their "Summary of [the] Argument," the defendants expressly state that "[t]he question before the Court is whether the Government may constitutionally continue to use the death penalty, knowing that, in the process, it will execute innocent defendants on a regular basis." Joint Brief for Defendants-Appellees, at 4 (emphasis added). The defendants do not even mention the FDPA in their Summary of the Argument, let alone any of the FDPA's particular procedures. Further, the crux of their argument throughout their original brief was that, based on new DNA evidence, "[w]e now know, not as an abstraction but as a fact, that if we continue to put prisoners to death we will kill numerous innocent people." Id. at 51 (internal quotation marks omitted). The defendants never conditioned this claim on the particular terms or procedures of the FDPA, nor did they indicate that any death penalty statute could conceivably prevent this problem. To the contrary, the defendants expressly stated that "[w]e do not know how to cure the problem" and that, "[f]or the foreseeable future, traditional trial methods and appellate review will not prevent the conviction of numerous innocent people." Id. (internal quotation marks omitted).
 
 
 12
 To support their contention that we misunderstood their argument on appeal, the defendants point to two footnotes in their original brief on appeal, both of which indicate that dismissal of the death penalty notices was only one of several procedural remedies proposed by the defendants before the District Court. Joint Brief for Defendants-Appellees, at 10 n. 7, 52 n. 72. First, it bears recalling our well-settled rule that "[w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir.1993); see also Caiola v. Citibank, N.A., New York, 295 F.3d 312, 328 (2d Cir.2002); Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir. 2001); Diesel v. Town of Lewisboro, 232 F.3d 92, 110 (2d Cir.2000); Concourse Rehabilitation and Nursing Center, Inc. v. DeBuono, 179 F.3d 38, 47 (2d Cir.1999); United States v. Barnes, 158 F.3d 662, 672 (2d Cir.1998). But even if, for the sake of argument, we were to consider the points raised in these footnotes, they simply do not indicate that the defendants' argument on appeal challenged the specific procedures of the FDPA rather than the death penalty per se. In fact, in the second of the footnotes cited in the Petition, the defendants explicitly state that "the District Court correctly concluded that only dismissal of the notices of intent to seek the death penalty would provide adequate protection." Joint Brief for Defendants-Appellees, at 52 n. 72. Accordingly, in their argument on appeal, the defendants clearly maintained that none of their previously-proposed procedural remedies could rectify the asserted constitutional infirmity of the FDPA. Id.[2] And, insofar as the defendants argued that no procedural safeguards could render the FDPA constitutional, id. at 51, 52 n. 72, they were necessarily asking us to declare capital punishment itself unconstitutional.
 
 
 13
 For the foregoing reasons, we conclude that our previous opinion properly analyzed the issue presented on appeal as a constitutional challenge to the death penalty per se. The defendants' remaining arguments in their petition for rehearing — that our opinion misconstrued several Supreme Court precedents — are without merit.
 
 
 14
 Accordingly, the motion for rehearing is DENIED.
 
 
 
 Notes:
 
 
 [1]
 The District Court did briefly allude to the procedural similarities of the state and federal criminal trial processes, summarily concluding that
 there is no logical reason to suppose that practices and procedures under the Federal Death Penalty Act will be materially more successful in preventing mistaken convictions than the deficient state procedures that have already been shown to be wanting. By virtue of the Fourteenth Amendment, all the primary protections are the same in both systems: proof beyond a reasonable doubt, trial by jury, right to effective assistance of counsel, right of confrontation, etc.
 Id. at 256. But this attack on the criminal justice system generally — and, indeed, on the application of the death penalty generally — does not suggest, much less establish, that the District Court based its decision on the specific procedures of the FDPA.
 
 
 [2]
 The defendants also cite discussions that occurred during oral argument to support their allegation that we misconstrued their claim. But "[n]ormally we will not consider arguments raised for the first time ... at or after oral argument."United States v. Barnes, 158 F.3d 662, 672 (2d Cir.1998). As discussed above, in their brief on appeal, the defendants did not challenge the particular procedures set forth in the FDPA but, instead, argued that no conceivable procedural safeguards could save the FDPA from unconstitutionality. To the extent the defendants may have changed their position during oral argument in response to questions from the bench, we properly declined to consider their alternative line of attack.