IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,292






JAMES EDWARD MARTINEZ, Appellant



v.



THE STATE OF TEXAS






ON DIRECT APPEAL


FROM TARRANT COUNTY






 Cochran, J., delivered the opinion of the unanimous Court.



O P I N I O N



 In February of 2002, appellant was convicted of capital murder for the shooting
deaths of a man and woman in Fort Worth. Tex. Pen. Code Ann. § 19.03(a). The evidence
showed that appellant was angry at the woman because she allegedly owed him money. 
Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure Article 37.071, § 2(b) and 2(e), the trial judge sentenced appellant to death. Art.
37.071 § 2(g). (1) Direct appeal to this Court is automatic. Id., § 2(h). Appellant raises eight
points of error. We affirm.

 In his first point of error, appellant claims that the indictment was fundamentally
defective because it did not allege future dangerousness. He relies on Apprendi v. New
Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002), to support his
contention. 

 The United States Supreme Court issued its opinion in Apprendi in 2000,
approximately two years before this case went to trial. Appellant did not object to the
indictment prior to trial. Thus, he has waived error on appeal with respect to his argument
regarding Apprendi. Tex. R. App. P. 33.1.; Studer v. State, 799 S.W.2d 263, 273 (Tex.
Crim. App. 1990).

 Ring, which was issued after appellant was convicted, requires that any fact (other
than prior convictions) that increases the maximum penalty be proved beyond a reasonable
doubt. Ring, 536 U.S. at 600. The Supreme Court focused on facts which would increase
punishment over the statutory maximum. The statutory maximum punishment in Texas
capital murder cases is death. Tex. Pen. Code § 19.03(b). Including the issue of future
dangerousness in the indictment would not allow the State to seek a more severe
punishment. Accordingly, Ring does not apply. See Resendiz v. State, 112 S.W.3d 541
(Tex. Crim. App. 2003); Allen v. State, 108 S.W.3d 281 (Tex. Crim. App. 2003). 
Appellant's first point of error is overruled.

 In his second point of error, appellant contends that the Texas death penalty scheme
is unconstitutional because it fails to assign a burden of proof to the State to show a lack of
mitigation under the first special issue. We have previously rejected this identical claim. 
Jackson v. State, 33 S.W.3d 828, 840 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1068
(2001). Appellant makes no argument that Jackson was wrongly decided or should be
overruled. His second point of error is overruled. 

 In his fourth point of error, appellant claims that the trial court erred in excluding
hearsay testimony from a police detective regarding descriptions of the assailant made by
three witnesses. He contends the witness statements should have been allowed into
evidence as excited utterances. 

 Detective McCaskill testified that on September 20, 2000, he was called to the
scene of a double murder. When he arrived, he interviewed an eyewitness, Lisa Collins. 
There were two other eyewitnesses and, although McCaskill did not interview them, he was
familiar with their statements. On cross-examination during the guilt or innocence phase
of trial, appellant asked McCaskill to relate to the jury the descriptions of the assailant
given by each eyewitness. The State objected to the question as eliciting hearsay, and the
objection was sustained. Appellant made a bill of exception in an attempt to show that the
eyewitness statements were excited utterances, and therefore, admissible as an exception
to the hearsay rule. After appellant made the bill, the State re-urged its hearsay objection,
and appellant again argued that the statements were excited utterances. The trial court
sustained the State's objection and excluded the evidence.

 Hearsay is a statement made by someone other than the declarant that is offered to
prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible
unless it falls under one of the exceptions to the hearsay rule. Tex. R. Evid. 802. An
excited utterance, an exception to the hearsay rule, is a "statement relating to a startling
event or condition made while the declarant was under the stress of excitement caused by
the event or condition." Tex. R. Evid. 803(2). 

 The three eyewitnesses in this case gave conflicting descriptions of the assailant. 
One described him as tall and thin, while the other witnesses described him as big and
heavy. (2) The only argument upon which appellant relies, that the statements were excited
utterances, is not sufficiently supported by the record. The record shows that Detective
McCaskill arrived at the crime scene about an hour and a half after the murders. He
testified that he believed that the statements the eyewitnesses gave were made while they
were still excited from observing the murders. When one of the eyewitnesses testified, she
agreed with defense counsel that she was "pretty excited" when she spoke to Detective
McCaskill. Although this is some modicum of evidence that the eyewitnesses were in an
excited frame of mind when they spoke to the officer, it is thin indeed. There was no
evidence that the eyewitnesses had been in a sustained "excited" state of mind since the
event or that their capacity for reflection and careful consideration had been stilled. The
basis for the excited utterance exception is that 

 "when a man is in the instant grip of violent emotion, excitement or pain, he
ordinarily loses the capacity for reflection necessary to the fabrication of a
falsehood and 'the truth will come out.'" 


Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting Evans v. State, 480
S.W.2d 387, 389 (Tex. Crim. App. 1972). One may become excited at a football game, at
an accident scene, or during a political debate, but that excitement does not mean that the
person has necessarily lost the capacity for mental reflection and careful thinking as a
result. The trial court did not abuse its discretion in excluding the eyewitnesses' out-of-court statements because the record supports a finding that appellant failed to meet the
foundation requirements for the excited utterance exception. Compare Zuliani, 97 S.W.3d
at 596 (upholding trial court's ruling admitting out-of-court statement as an excited
utterance because record supported that ruling).

 Even if the trial court erred in its ruling, harm is not shown. Tex. R. App. 44.2. Two
of the witnesses who gave conflicting descriptions of the shooter testified about their
descriptions at trial. Thus, the jury was aware of the conflicting descriptions even without
McCaskill's testimony. Appellant's fourth point of error is overruled.

 In his third point of error, appellant claims that the trial court erred in excluding
evidence that a State's witness, Casey Ashford, knew how to make a pipe bomb. Appellant
argues that this evidence should have been admitted under Rule 404(b) to show Ashford
might have committed the capital murders in this case.

 Ashford testified at the guilt or innocence phase of trial that he and appellant were
long-time friends. In the early morning hours on the day after the murders, appellant went
to the ranch where Ashford lived and asked him to keep a black canvas bag. Ashford agreed
to keep the bag, and appellant left. The next day, Ashford heard of the murders and looked
inside the bag. He saw a rifle and decided to bury the bag under a water tank on the ranch. 
Some time later, Ashford told Pat Machak, the owner of the ranch, about the bag. 
Unbeknownst to Ashford, Machak contacted the police. When the police interviewed
Ashford and told him they knew about the bag, he told them its whereabouts. (3) When the
police opened the bag, they found a rifle, a bag of fertilizer, a fuse, dark clothing, a pipe
bomb, a ski mask, a double-edged knife, a bullet-proof vest, and ammunition. 

 On voir dire examination, appellant asked Ashford if he had ever made a pipe bomb. 
Ashford replied that he had not, but he admitted that he had been arrested for possessing
one as a juvenile eleven years earlier. However, the record reflects that what Ashford
actually possessed was a snuff can filled with .22 caliber bullets and gun powder stuffed
into a candle. It did not resemble the pipe bomb in this case which was a foot-long piece of
"PVC" pipe wrapped in duct tape, which was capped on both ends, and contained nails. One
end of the pipe had a cannon fuse coming out of it. Appellant then asked Ashford if he had
been expelled from school for selling pipe bombs. He replied that he had not. Appellant
produced an unsigned, undated document which was titled, "Pipe Bomb," and asked Ashford
if he wrote it. The document appears to give handwritten instructions for making a pipe
bomb. At the bottom of the document, there is a handwritten notation that "Mrs. Carter"
found the document in "Joey's billfold" and turned it over to the Crowley Police
Department. It states further that Mrs. Carter "says that this came from Casey Ashford." 
Ashford denied writing the instructions and the trial court excluded the evidence.

 On appeal, appellant argues that the document shows that Ashford knew how to make
a bomb and therefore, could have been the one who made the pipe bomb found in the canvas
bag. He states further that if this were true, Ashford could have been the killer in this case
because the rifle and the pipe bomb were found together buried near Ashford's residence. 

 This Court reviews the trial court's ruling to exclude evidence under an abuse of
discretion standard and will not reverse the trial court's ruling unless it falls outside the
zone of reasonable disagreement. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.),
cert. denied, 534 U.S. 855 (2001); Moreno v. State, 22 S.W.3d 482, 487 (Tex. Crim. App.
1999). 

 Rule of Evidence 404(b) states that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. It
may, however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a
criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State's case-in-chief such evidence other than that arising in
the same transaction.


 Even assuming, arguendo, that Rule of Evidence 404(b) applies to witnesses, the
trial judge was within his discretion to rule that an unauthenticated hearsay accusation by an
unidentified witness eleven years earlier did not establish that Ashford had any knowledge
of how to make a pipe bomb like the one found in appellant's bag. See Salazar, 38 S.W.3d
at 151. Appellant's third point of error is overruled.

 In his fifth point of error, appellant claims that the trial court erred by denying a
mistrial when a police detective testified that appellant took a polygraph test. During
cross-examination of Detective Thomas Boetcher, the following occurred:

 [DEFENSE COUNSEL]: Detective Boetcher. When did you say you talked to
Ms. Martinez?


 [WITNESS]: When I took James [appellant] home after the polygraph
exam - I'm sorry - after my interview with him.


 [DEFENSE COUNSEL]: You took him home - first of all, I'm going to object
that's nonresponsive.


 [THE COURT]: Sustained.


 [DEFENSE COUNSEL]: I'd ask the jury be instructed to disregard.


 [THE COURT]: The jury is instructed to disregard the last answer of the
witness.


 [DEFENSE COUNSEL]: I'll ask for a mistrial. I don't think your instruction can
cure the error.


 [THE COURT]: Denied.

 

 This Court has held that, "where a witness gives an unresponsive answer which
mentions a polygraph test but does not mention the results of such test, there is no error in
failing to grant a mistrial where the objection is sustained and the jury instructed to
disregard." Richardson v. State, 624 S.W.2d 912, 914-15 (Tex. Crim. App. 1981). The
trial court did not err in declining to grant a mistrial in this situation. Appellant's fifth point
of error is overruled. In his sixth point of error, appellant claims that the Texas death penalty scheme is
unconstitutional because it "leads the State to execute an unacceptable number of innocent
defendants." He relies on United States v. Quinones, 205 F.Supp.2d 256 (S.D.N.Y. 2002),
to support his argument.

 In Quinones, a federal district judge held the federal death penalty statute
unconstitutional. Appellant predicts that the Second Circuit Court of Appeals will uphold
the decision in Quinones, that the United States Supreme Court will grant a writ of
certiorari, hear arguments in the case, agree with the Second Court of Appeals and overturn
the federal death penalty statute. However, the Second Circuit reversed the district court's
holding in Quinones after appellant filed his brief. United States v. Quinones, 313 F.3d
49 (2nd Cir. 2002), reh'g denied, 317 F.3d 86 (2003). Regardless, we will not declare the
Texas death penalty scheme unconstitutional based on appellant's prediction as to how the
United States Supreme Court will dispose of a particular federal death penalty case. 
Appellant's sixth point of error is overruled. 

 In his seventh point of error, appellant alleges that the Texas death penalty scheme
violates the Eighth Amendment prohibition against cruel and unusual punishment because it
allows the jurors too much discretion in deciding who receives the death penalty and who
does not. This claim has previously been raised and rejected. Chamberlain v. State, 998
S.W.2d 230, 238 (Tex. Crim. App. 1999); McFarland v. State, 928 S.W.2d 482, 519 (Tex.
Crim. App. 1996). Appellant's seventh point of error is overruled.

 In his eighth point of error, appellant claims that under Penry v. Johnson, 532 U.S.
782 (2001), the Texas death penalty scheme is unconstitutional because the mitigation
issue "sends mixed signals to the jury thereby rendering any verdict reached in response to
that special issue intolerably unreliable." Penry is distinguishable because the jury in that
case received a judicially crafted nullification instruction. Penry, 532 U.S. at 789-90. 
Here, appellant received the statutorily prescribed instruction required under Article
37.071 § 2(e)(1) which does not contain a nullification instruction. Art. 37.071 § 2(e)(1). 
Thus, there is no error. See McFarland, 928 S.W.2d at 488-89. Appellant's eighth point
of error is overruled. 

 We affirm the judgment of the trial court. 

Cochran, J.

Delivered: November 5, 2003.

Do Not Publish
1. Unless otherwise indicated this and all future references to articles refer to the Texas Code of
Criminal Procedure.
2. When appellant cross-examined McCaskill regarding the eyewitness statements, he was not
offering the statements to prove the truth of the matter asserted- that appellant was tall, thin, big or
heavy. Rather, the statements were offered to show conflicting descriptions of the shooter. As such,
the eyewitness statements are not hearsay. Tex. R. Evid. 801(d). However, appellant did not urge this
argument at trial or on appeal as he is required to do. Tex. R. App. 33.1 & 38.1(h). 
3. Ashford pleaded guilty to tampering with evidence and received three years deferred
adjudication.